GEORGE DWELLEY *vs.* JULIA DWELLEY.

Plymouth.    October 19, 1886. — February 23, 1887.

B. and C., who were brother and sister, and who occupied a house and land owned by them, requested A. to enter into an arrangement for their support, during their lives, in that house. In consequence of this, they conveyed to A. the house and land, and A. executed to them a bond, in the penal sum of $3000, conditioned that he should faithfully provide for them, in sickness and in health, good and proper food, medicine, and clothing, and proper and kind care and nursing during their natural lives, together with fuel for each of them, prepared and housed for their fires, and suitable board and care for a horse for their own use; that B. was to use and occupy a certain room of the house, and C. a certain other room in the house, when built; that they were to have the right to pass through the other rooms in the house, to and from their rooms, to the well, barn, privy, and yard; and that A. should not sell the house during their lives. A. on the same day executed a mortgage of the premises to B. and C. which contained the condition that A. should pay them the sum of $3000, on demand, or should support and maintain them as provided in said bond. The mortgage also contained a power of sale. Before these instruments were executed, A. spent between $2000 and $3000 in making alterations in the house for their occupancy. A., B., and C. lived together in the house for about three years, when B. died, and C., the sister, left the house, without fault on the part of A., and lived elsewhere, claiming a right to support from A. in her new home. This A. refused to furnish. *Held*, that there was no breach of the condition of the bond; and that A. could maintain a bill in equity against C. to restrain her from selling the land under the power contained in the mortgage.

BILL IN EQUITY, filed December 17, 1883, to restrain the defendant from selling by auction, in pursuance of a power contained in a mortgage from the plaintiff to the defendant, several parcels of land in Pembroke. A preliminary injunction was issued. The answer alleged that the condition of the mortgage was broken. The case was referred to a master, who found the following facts:

About the beginning of the year 1879, or earlier, the defendant and her brother, Charles Dwelley, since deceased, requested the plaintiff to enter into an arrangement for their maintenance and support during their natural lives, in the house which they then owned, and which adjoined the estate owned by the father of the plaintiff, upon which the plaintiff was then living. As a consideration therefor, they agreed to execute and deliver to the plaintiff a warranty deed of the premises owned and occupied

by them, which deed was subsequently executed and delivered by them to him, on August 22, 1879. Upon the same day, the plaintiff executed and delivered to them a joint and several bond in the penal sum of $3000, the condition of which is as follows: " Whereas the said Charles Dwelley and Julia Dwelley have this day conveyed to George Dwelley by a warranty deed the following real estate of which they are possessed, formerly belonging to their father the late Benjamin Dwelley, deceased, for the consideration of their maintenance and support during their natural lives, and other privileges and things hereinafter named: Now, therefore, if the said George Dwelley, his heirs, executors or administrators, shall faithfully provide for said Charles and Julia, both in sickness and in health, good and proper food, medicine, and clothing, and proper and kind care and nursing during their natural lives, together with fuel for each of them, prepared and housed for their fires, and suitable board and care for a horse for their own use; and the said Charles is to have, use, and occupy the westerly front room of the house below, and the southeasterly chamber, for his own and separate use during his natural life; and the said Julia to have, use, and occupy the southwesterly front room of the house (when built) for her own and separate use during her natural life; and the said Charles and Julia to have the right and privilege to pass through the rooms in the said house not before reserved to them, to and from the well, barn, privy, and yards, through the front, end, and back doors of said house, as their convenience may require; and in all the foregoing named conditions the said George Dwelley, his heirs, administrators, and executors, shall see that they are faithfully performed, and also the said George, his heirs and administrators and executors, shall not sell or dispose of any of said real estate during the natural lives of the said Charles and Julia, without their consent, being given to said George in writing, first being obtained. Now when all the foregoing conditions are faithfully performed and fulfilled, then this obligation shall be void, otherwise to remain in full force and virtue."

On the same day, the plaintiff also executed and delivered to them a mortgage deed of the premises conveyed to him, the condition of which is as follows: " Provided, nevertheless, that if the

said grantor, or his heirs, executors, administrators, or assigns, shall pay unto the said grantees, or their executors, administrators, or assigns, the sum of three thousand dollars, on demand, or shall support and maintain said grantees as provided in a bond of date of August 22, 1879, given by said George Dwelley to said Charles and Julia, as therein provided, during their natural lives and the life of the survivor of them, and shall pay all taxes and assessments on the granted premises, shall keep the buildings thereon insured against fire in a sum not less than one thousand dollars for the benefit of said grantees and their executors, administrators, and assigns, in such insurance office as they shall approve, and shall not commit or suffer any strip or waste of the granted premises, then this deed, as also said bond signed by George Dwelley, whereby he promises to support the said grantees, shall be void." This deed contained a power of sale, to be exercised "upon any default in the performance or observance of the above condition."

About May 4, 1879, before the execution of either of the foregoing instruments, the plaintiff, in pursuance of the plan which was afterwards adopted by the parties, began the necessary alterations and improvements of the premises, for carrying out said plan, and then and subsequently expended therefor between two and three thousand dollars. Charles Dwelley died on April 28, 1882. Immediately after his death, and before the plaintiff had returned from the funeral of Charles, the defendant left the house in which she was living, and went to the house of one Dr. Phillips, about a mile away. Phillips was a spiritualist, who had known the defendant but a few months. She was herself a spiritualist, and had been in the habit of consulting clairvoyants and spiritualistic mediums; and the only reason assigned by the defendant for leaving the house was that she had been told by Phillips and his wife that she would become insane if she remained in the house of the plaintiff.

During the time prior to her leaving the house, she had made no complaint as to her treatment by the plaintiff, and no complaint was ever made by Charles Dwelley. Immediately after her leaving the house, the plaintiff and his wife tried to recall the defendant, and asked her to come back and live with them. They were unable to see her in person, Phillips refusing to let them

"get at her." The plaintiff, on May 10, 1882, went to the house of Phillips and did not succeed in seeing her, and thereupon notified Phillips to tell her, that, if she would come back to his house, he would support her, but he would not support her while she lived with Phillips. Soon after, Phillips went to the house of the plaintiff and demanded some wood from him for fuel for the defendant, and said to him, "I want you to understand I am going to get you out of here, and have the handling of Charles Dwelley's property." The plaintiff made several attempts subsequently to see the defendant, and to induce her, if possible, to come back and live with him as she had been doing before the death of her brother Charles; but he was invariably prevented from so doing, and has never seen her since she left his house. Phillips a short time afterwards moved away from the house in South Hanover, where he was living at the time the defendant went to live with him, and is now said to be living in Dover, Massachusetts. It appeared from the evidence that the only cause for the defendant's leaving the house of the plaintiff was her fear that she might become insane if she remained there. It did not appear that the plaintiff at any time refused or neglected to perform faithfully and fully all the conditions imposed upon him by Charles Dwelley and the defendant, or either of them, while they lived with him.

On or about December 4, 1883, the defendant, as mortgagee, advertised a sale of the premises described in said mortgage deed, by virtue of the power of sale contained therein.

Technically, the condition of the bond was not complied with as to insurance, but the insurance was, by the mutual assent of the parties in interest, effected in a different, but satisfactory way.

The case was heard, by C. Allen, J., on the bill and answer, and the report of the master. It was admitted at the hearing, and the judge so found, that, in point of fact, the plaintiff had furnished no support to the defendant since she left his house.

The judge ordered the bill to be dismissed, with costs; and the plaintiff appealed to the full court.

J. White, (W. H. Osborne with him,) for the plaintiff.

P. H. Cooney, (W. Nutt with him,) for the defendant.

GARDNER, J. The defendant and her brother conveyed several tracts of land to the plaintiff, taking back a mortgage conditioned for their support and maintenance during their natural lives, as provided in a certain bond. The bond does not specifically require that the support and maintenance shall be furnished only at the dwelling-house mentioned in the same. The defendant contends that the contract is entitled to a liberal construction in her favor, and that she is entitled to the benefit of all reasonable doubts as to the meaning of the terms used, and that such has been the general current of authority in this, as well as in other courts, in cases like the present.

There is no well-established rule by which each case shall be governed, but each case must be decided on its own facts, depending upon the language of the contract or instrument and the surrounding circumstances. In *Fiske* v. *Fiske*, 20 Pick. 499, 503, Chief Justice Shaw said: "Perhaps the only rule to be extracted from all the cases is this: that a court will look at all the circumstances of the case, the nature of the property, the residence, occupations, and relations of the parties, the usages of the place and of the business to which the contract relates, and ascertain by reasonable inference what the parties must have understood and mutually expected at the time of the making of the contract, and then adopt that construction which will best and most nearly carry the contract into effect as they intended and understood it." In that case the condition of the mortgage was to provide a horse for the mortgagee to ride to meeting and elsewhere, when necessary, find her fire-wood for one fire, to be drawn and cut at the door fit for use, give her a good cow, and keep said cow for her during her natural life. The court was of opinion that there was nothing to warrant the construction that the wood was to be furnished the mortgagee only at the house on the farm, on which she then lived, even if the mortgagee had a privilege under her deceased husband's will to live in the house, it being a privilege which she might exercise or not, at her choice.

*Conkey* v. *Everett*, 11 Gray 95, was decided upon the following clause of the will of Jason Everett: "I give and bequeath to my beloved wife, Lucy Everett, her support and maintenance in sickness and in health, and meaning all that shall or may be

necessary for her comfort for and during her natural life fully to be completed and ended, out of my estate." It was held that, although it was highly probable that it was the expectation of the testator that the support would be furnished at the place of his last residence, yet there was nothing in the terms of the will to give it such a locality. Had there been a devise to the widow of a part of the house for her occupation, this would have strongly indicated a purpose of the testator that she should there receive her support.

We have been referred by the defendant to *Wilder* v. *Whittemore*, 15 Mass. 262; *Hubbard* v. *Hubbard*, 12 Allen, 586; *Flanders* v. *Lamphear*, 9 N. H. 201; *Craven* v. *Bleakney*, 9 Watts, 19; *Wusthoff* v. *Dracourt*, 3 Watts, 240; and *Tope* v. *Tope*, 18 Ohio, 520. In all these cases, excepting the last, there is either a bald agreement to maintain, or the right to occupy, without the accompanying obligation to support in the house occupied. In *Tope* v. *Tope*, the wife was to have her maintenance " off of the farm " while she lived. " The said Joseph Tope is to let my beloved wife have the house in which I now live while she lives; also he is to furnish her with everything that is necessary for her comfort while she lives." The court held that, although the testator contemplated that upon his death his wife would continue to reside in the house and there receive her support, yet if she refused to reside there, but preferred to reside elsewhere, the duty of the son charged with her maintenance was to pay her whatever sum of money it might be considered worth to support her on the farm, and no more.

In examining the various cases cited by counsel, but little aid can be derived. Each case must be decided on its own facts, considering the language of the instrument and the surrounding circumstances.

In the case at bar, it is evident that, by the condition of the bond, a personal trust was confided in the plaintiff by the obligees to perform such trust in behalf of the defendant and her brother. The plaintiff agreed to provide for them, " both in sickness and in health, good and proper food, medicine, and clothing, and proper and kind care and nursing during their natural lives, together with fuel for each of them, prepared and housed for their fires, and suitable board and care for a horse for their

own use." This personal trust could not well be discharged except upon the premises where all the parties resided.

Considering the entire contract, the intention of the parties to it becomes more evident, "and the said Charles is to have, use, and occupy the westerly front room of the house below, and the southeasterly chamber, for his own and separate use during his natural life; and the said Julia to have, use, and occupy the southwesterly front room of the house (when built) for her own and separate use during her natural life." Then follow descriptions of other rights and privileges granted the obligees. It is in substance provided that Julia is to occupy the front room during her natural life; that she is to reside there as long as she lives; that she is to have and occupy it for her own separate use during her life. This being the fair meaning of this portion of the condition of the bond, it follows that the provisions made for her in sickness and in health are to be furnished to her in this house, and not elsewhere.

The surrounding facts tend to confirm this construction of the bond, and to show what was the real intent of the parties. The house conveyed to the plaintiff was that in which the mortgagees were residing when the mortgage was executed. The mortgagor by the terms of the bond was intending to build additions to the dwelling-house for the convenience of the mortgagees, and he expended between two and three thousand dollars in the necessary alterations and improvements of the premises, in pursuance of a plan adopted by the parties. The bond contained a stipulation that the plaintiff should not dispose of the real estate, including the dwelling-house, without the consent of the obligees, during their natural lives. The bond was explicit in statement as to the accommodations which the defendant and her brother should have in respect to rooms in the plaintiff's house, and the other privileges granted to them about the house and premises. It appears that part of the contract was necessarily to be executed in the house, and that a change of residence by the mortgagees would impose a greater burden upon the plaintiff in supporting them, and that the contract makes no reference to such a contingency. Until the death of the brother Charles, all the parties acted upon the construction here given to the bond, without doubt or question.

Considering all the surrounding circumstances in connection with the language of the bond, a majority of the court are of opinion that the bond points out the house of the plaintiff as the place where the care and support of the defendant was to be furnished by the plaintiff, and that the defendant is not entitled to demand that they shall be furnished to her elsewhere. It is not contended by the defendant that, if the entire contract is to be carried out upon the premises and dwelling-house of the plaintiff, there has been any breach of its terms, or that the defendant has not at all times been treated kindly and considerately by the plaintiff and his family.          *Injunction made perpetual.*