THE DWELLING-HOUSE INSURANCE COMPANY v. DAVID A. JOHNSTON, DAVID FORBES, AND LYMAN AUSTIN.

*Principal and surety—Release of surety.*

1. Where the sureties on an insurance agent's bond assisted him to raise the money to make up a deficit due the company, and thereupon notified it by letter of such fact, and that they refused to be longer liable on the bond unless the company insisted upon monthly settlements with the agent, a failure on the part of the company to comply with such condition will release the sureties from further liability.

2. Where, in a suit upon the bond to recover a deficit arising after such notice, the sureties defend upon the theory of such notice, and of the failure of the company to require such monthly settlements, and the company meet such defense by a denial of the receipt of the notice, and of knowledge of the first default of the agent as to the sureties, and of their furnishing the money to make up the first deficit, the court should instruct the jury that if the contention of the company is established it is entitled to recover.

3. Where in such a suit it appears that, upon receiving notice of such second deficit, the sureties notified the company that

they did not intend to pay any more of the agent's accounts, and that they required the company to return their bond, there can be no recovery by the company for any moneys appropriated by the agent after the receipt of such notice.

Error to Kent. (Burch, J.) Argued January 14, 1892. Decided February 5, 1892.

Debt. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Everett D. Comstock,* for appellant.

*D. E. Corbitt,* for defendants Forbes and Austin.

McGRATH, J. This is debt upon a bond given by defendant Johnston, plaintiff's agent, upon which defendants Forbes and Austin were sureties.

Johnston had acted as agent of plaintiff at Grand Rapids from 1886 to some time in 1890. In December, 1888, plaintiff notified the sureties that Johnston was in arrears in the sum of $290, and that the company would have to look to the sureties for the amount of the deficit. Defendants claim that, upon receipt of this notice, the sureties called upon Johnston, and, after some negotiations, on January 12, 1889, indorsed Johnston's notes for $250, and with the proceeds, and the sum of $40 added by the agent, Johnston purchased a draft for $290, and forwarded it to plaintiff. These notes the sureties were afterwards compelled to pay. On the same day that the draft was sent by the agent the sureties wrote to the company, reciting that they had just furnished the money to enable Johnston to square up his accounts, and caused a draft to be sent for the amount, and that thereafter they should insist upon monthly settlements between the company and Johnston, or they should not be responsible upon the bond. Upon January 15, 1889, the company wrote the sureties as follows:

"We have intended to write you for some time past in connection with the agency balance of D. A. Johnston, about which you wrote to us recently. We have now much satisfaction in informing you that Mr. Johnston has remitted us the full balance of his indebtedness up to the 1st of January, and we have every reason to believe that from this time out he will keep his account up close, in good shape."

After the receipt of this letter, the sureties saw Johnston frequently, and he informed them that he was making monthly statements to the company, and settling with it each month. The sureties heard nothing from the company until December 11, 1889, when they received the following letter:

"Mr. D. A. Johnston, whose bond you signed, with a surety, has been promising to remit the balance due the company for some time. We have written him repeatedly, but he lately spoke about negotiating a sale of his agency or taking a partner. At any rate, he has failed to keep his promise, and we must look to you for the balance due, amounting to $104.27. That is for premiums on business written during the past year. We will be much obliged if you will either see that he remits the amount or send your own check for the same."

On receipt of this letter the sureties replied as follows:

"Yours of the 11th is at hand. In reply we can only say that we informed you several months ago that we would not be responsible for any more of his business, but it seems you have allowed him to continue business as before. We intend to pay no more of his accounts, and we require that you return us the bond. If you intend to try and collect any more money of us, you might as well commence now as at any time. Let us have the matter settled."

It appeared that in the mean time Johnston had continued to act as agent of the company, had reported at the end of each month his receipts, but had not forwarded the moneys collected with the reports, and the

company had not insisted upon monthly settlements. The total amount so reported from month to month, during the time from January 15, 1889, to July 1, 1889, was $115.48. It further appeared that the company received no reports from Johnston after the report for the month of June, 1889, but that the company did not disturb him in his agency, supposing, as it claims, that he was doing no business, until March, 1890, when the company sent some one from the home office to Grand Rapids, who discovered that Johnston had been continuing to issue policies and collect premiums, and that there was a further deficit of $91.06, making a total of $206.54, which amount the company claims it should be allowed to recover. It appeared that the company had intrusted to Johnston blank policies, duly signed and sealed by the officers of the company, and numbered consecutively between certain given numbers. The jury found a verdict for plaintiff as against Johnston, but in favor of the sureties, and plaintiff appeals.

Error is assigned upon the following instructions to the jury:

"It is the duty of a company, when parties have entered into an undertaking to insure the good faith, honesty, and correct conduct of an agent, as such, to do whatever is reasonable and proper, not merely to conduct the business of their company by correct and well-known and proper methods of doing such business, but to keep the sureties informed, within reason,—to a reasonable extent,—of any dereliction upon the part of the agent which comes to their knowledge, and which the sureties might not have an opportunity to know. In other words, they are bound to deal with the sureties in such a bond with common honesty and reasonable good faith, not expecting to let men go wild as agents,—run loose, at loose ends; do business according to unauthorized and unreasonable methods, and to persistently be a defaulter or embezzler to their company,—and expect that the sureties will all the while be held responsible; but after

using reasonable diligence to keep the agent right, and to see that he is right, taking such methods as ordinary business men in the ordinary business transactions of life would consider proper, reasonable, and honest in respect to their own interest, to then inform at the earliest reasonable opportunity the sureties in such a bond, so as to enable those sureties to protect themselves, if necessary, against loss by a principal. In other words, they must not wholly themselves neglect their own business affairs, and at the same time hold the sureties to the strictest accountability as sureties upon the bond. In other words, they are required to act with good faith and common honesty towards the sureties on the bond of an agent. If they do less than this, in the opinion of the court, it is a wrong, as against the sureties on the bond of the agent. It is a negligence upon their part which, if allowed to run to an unreasonable extent, may amount to a fraud; that is, it may act as a fraud upon the other party, meaning, of course, the sureties in the bond, and thereby release them from responsibility."

These instructions were calculated to mislead the jury. Plaintiff's contention was that it had dealt in the same manner with the agent from 1886 until December, 1889; that it had not required monthly settlements; that the agent had eventually responded to demands for settlements; that it relied upon the former conduct of the agent, and the fact that it considered the bondsmen responsible; that it had no knowledge that the sureties had indorsed Johnston's notes to enable him to raise the $290, nor did it know that the sureties had been compelled to pay the notes so indorsed; and that it did not receive the letter which the sureties claimed to have written to it at the time the draft was sent to it in January, 1889. The agent had large powers, and the bond contained no limitations upon his powers, nor did it impose any duty upon plaintiff to insist upon monthly settlements. There is no pretense that the sureties had been misled regarding the extent of Johnston's powers,

or that they had ever inquired regarding them. The bond contained this recital:

" *Whereas,* the said David A. Johnston, by virtue of a commission regularly issued by the proper officers of the above-named insurance company, holds the appointment as agent for said company; and—

" *Whereas,* by reason of the aforesaid appointment and as such agent, he is liable for, and will receive into his hands and possession, divers sums of money, goods, and chattels, the property of said company, and is bound to keep true and accurate accounts of said property, and of his receipts and disbursements for and on account of said company, and may also receive notes executed to the said company, for insurance premiums owing, and may also be and hereafter become indebted to said company for money loaned or foreborne to him by said company on account of commissions advanced on notes not subsequently collected."

The agent had authority, not only to issue policies, but to cancel policies, and to pay over to insurers return premiums. The bill of particulars showed that Johnston had canceled in all some 27 policies between the 1st day of January, 1889, and March, 1890, and that he had paid out about $130 as return premiums upon these canceled policies. It might be very properly urged that the conduct of the business made a fund in the agent's hands a necessity.

These instructions ignore plaintiff's contention. They assume that the company knew all that the sureties knew regarding the payment of the $250. They assume that a duty had been imposed upon the company, and that Johnston's failure to remit with each report was a further default, and that the company was bound so to regard it. In the absence of knowledge of Johnston's first default, and of the notice which the sureties claim to have given to the company, there was no testimony upon which a finding of bad faith or dishonesty or loose business

methods could be predicated. The jury should have been instructed that if the company had no knowledge of Johnston's first default, and did not receive the letter which the sureties claim to have written to the company on the day that the draft was sent, then the plaintiff was entitled to recover the amount of money collected by Johnston prior to the receipt by the company of defendants' letter of December 14, 1889; that there could be no recovery, in any event, for any moneys appropriated by Johnston after the receipt by the company of the last-named letter; and that if the sureties in January, 1889, wrote the letter which they claim to have written, informing the company that they had made up the deficit, and refusing to be further liable upon the bond unless the company insisted upon monthly settlements with Johnston, then it was the duty of the company to have complied, and, not having complied with that condition, it could not thereafter hold the sureties upon the bond.

A surety may be discharged by the doing of an act which is legally injurious to the surety, or which impairs his legal rights, or the omission to perform a duty when required by a surety, which omission results in injury to the surety. *Clark v. Sickler*, 64 N. Y. 231. When, in January, 1889, Johnston defaulted, the sureties had the undoubted right, upon making up the deficit, to demand a release from their obligation. Having that option, they had the right to insist, as a condition of the continuance of their liability, that the company should protect them by requiring monthly settlements, and, in the event of a subsequent default, that they should be notified.

The court very properly instructed the jury that, even though the company did receive the notice given by the

sureties, the sureties would be liable for all moneys retained during the first month, for which a balance in favor of the company was reported, but not paid.

For the errors referred to, the judgment must be reversed, and a new trial had, with costs to plaintiff.

MORSE, C. J., LONG and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.