DAVIS & RANKIN, Appellants, v. J. H. HENDRIX *et al.*, Respondents.

Kansas City Court of Appeals, November 19, 1894.

1. **Construction**: ISOLATED PHRASES: WORDS OF PLURALITY. In construing contracts, isolated phrases should not govern the evident intention shown by the whole contract, and words of plurality will not make a several contract joint.

2. ———: CIRCUMSTANCES: USAGES. In construction of contracts, courts will look at all the circumstances, the nature of the property, the occupation and relation of the parties, the usages of the place and the business, and ascertain by reasonable inferences what the parties must have understood and mutually expected; and then adopt that construction which will best and most necessarily carry the contract into effect as intended.

3. ———: DIFFERENT PARTIES, JOINT AND SEVERAL. There is no legal impediment to parties so contracting that one part of the obligation imposed by the contract may be joint and another may be several.

4. ——: CONTRACT: SEVERAL, NOT JOINT. A contract largely set out in the opinion by which fifty persons subscribe to a contract for building a cheese factory, each setting opposite his name the number of shares he agreed to take in a corporation to be subsequently organized, is *held* to be a several contract, and not a joint one, although it contain such words as, "We, the subscribers, hereto agree," and "We bind ourselves," etc.

*Appeal from the Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Fyke, Yates & Fyke* for appellant.

The court erred in construing the contract sued on to create a several obligation only. The contract is joint and several. R. S. 1889, sec. 2384. *Davis & Rankin v. Shafer et al.*, 50 Fed. Rep. 764. The making of a joint promise is implied from the use of such words as "we promise," "we agree," etc. Lawson on Contracts, sec. 116.

*Crosby Johnson* and *John E. Wait* for respondents.

(1) Was the liability of the subscribers to any one of the contracts in evidence joint or several? The following cases hold it was several, not joint. *Davis v. Barber*, 51 Fed. Rep. 148; *Davis v. Belford*, 70 Mich. 120; *Gibbons v. Grimsel*, 79 Wis. 365; *Gibbons v. Bente*, 22 L. R. A. 80; 53 N. W. Rep. 756; *Frost v. Williams*, 50 N. W. Rep. 964. The test whether an obligation is joint or several is whether it "denoted but a single, indivisible claim." 1 Chitty's Pleadings, 41. In joint obligations "all the obligors constituted, as it were, one person owing a single debt, and no one of them owed any part of it." Bliss on Code Pleadings, sec. 92. "When the parties engaged for the performance of distinct and several duties, mere words of plurality, such as

'we bind ourselves,' will not make the contract joint."
1 Add. on Contracts [Morgan's Ed.] 86; *Fell v. Goslin*,
7 Exch. 185.   A contract of subscription to the capital
stock of a corporation is a several contract between the
corporation and subscribers.   *Keane : v. Beard*, 11 Mo.
App. 10; *Ghio v. Beard*, 11 Mo. App. 21; 1 Rorer on
Railroads, 95, 96; *Hort v. Snell*, 39 Hun, 388; *Land-
warten v. Wheeler*, 106 Ind. 523.  (2)  Where contract is
ambiguous the interpretation put upon it by parties is
entitled to great weight.   *Dentman v. Kilpatrick*, 46
Mo. App. 624.   Interpretation put on a contract by an
agent—if acted on by the other party—binds the prin-
cipal.   *Resenleiter v. Lutherische*, 29 Mo. App. 291.
Where proposals are ambigious and the party to whom
the proposal is made places a construction upon it and
informs the other party of his interpretations and the
latter does not dissent therefrom, and the contract is
then completed, the plaintiff will be bound to that con-
struction.   *Flint v. Johnson*, 59 Vt. 190; 4 New Eng.
375; 9 Atl. Rep. 364.

ELLISON, J.—This action was begun to recover the
balance due on a written contract between plaintiff and
defendants.   The action was instituted against defend-
ant Hendrix and forty-nine others, they being charged
as joint contractors.   The contract sued on is as fol-
lows:

"Contract and specifications for a combined butter
and cheese factory.

"We, Davis & Rankin, party of the first part,
agree with the undersigned subscribers hereto, party of
the second part, to build, erect, complete and equip,
for said party of the second part, a combined butter
and cheese factory, at or near Cowgill, Caldwell county,
Mo., on north side of C., M. & St. P. R. Ry., as follows,
to wit:   *   *   *

"Said building shall be constructed and finished in substantial accordance with the specifications herein, in a workmanlike manner; the engine and boiler, and all other machinery and fixtures, shall be properly set up, and shall be in good running order before the party of the second part shall be required to pay for said factory.

"The parties of the second part do hereby agree to furnish, at their own expense, suitable lands for said buildings, together with sufficient water on said lot for the use of the business, and they shall be credited therefor, as a payment on this contract, the sum of $200, and it is further understood that in case said second party shall fail to furnish said land and water within ten days after the execution of this contract, the said Davis & Rankin at their option, may furnish said land and water.

"Davis & Rankin further agree to keep hired, at the expense of the stockholders, an experienced butter and cheese maker, for one year, if desired.

"The above building is to have a capacity of handling thirteen thousand to sixteen thousand pounds of milk per day. Said Davis & Rankin agree to erect said butter and cheese factory, as set forth by the above specifications, for ($4,900), forty-nine hundred dollars, payable in cash, or one-half April 1, 1890, and the balance one-half, July 1, 1890; settlement made as soon as factory is completed, with secured notes drawing eight per cent. interest after April 1, 1890.

"We, the subscribers, hereto agree to settle the above amount for said butter and cheese factory when completed. Said building to be completed before April 1, 1890, or thereabout after the above amount ($4,900) is subscribed.

"As soon as the above amount of $4,900 is subscribed, or in a reasonable time thereafter, the said

subscribers agree to incorporate under the laws of the state, as therein provided, fixing the aggregate amount of stock at not less than $4,900, to be divided into shares of $100 each. Said share or shares as above stated to be issued to the subscribers hereto in proportion to their paid up interest herein.

"It is hereby understood that Davis & Rankin will not be responsible for any pledges or promises made by their agents or representatives that do not appear in this contract, and made a part thereof, either in print or writing.

"For a faithful and full performance of our respective parts of the above contract, we bind ourselves, our heirs, executors, administrators and assigns.

"Executed and dated this seventh day of November, 1889.

> "DAVIS & RANKIN,
> "Per ROBINSON & OLCOTT,
> "Party of the first part.

| Name of subscribers to "A," "B" or "C" contracts. | No. of shares. | Amount of stock after incorporation. |
| --- | --- | --- |

Each of the subscribers signing the respective amounts which they placed opposite to their names.

The question for decision is: Is this contract joint or is it several, as respects the question of liability for the amounts of money subscribed? If it is joint, the judgment must be reversed. If it is several, it must be affirmed. If the contract is joint, then, under the provisions of our statute, sections 2384, 2387, Revised Statutes, 1889, all or any one of the subscribers may be sued for the whole sum subscribed. In construing contracts, isolated phrases or sentences should not be allowed to govern or subvert the evident intention of

the parties as shown by the contract as a whole. If the whole contract discloses that as to any part of it there is imposed upon the obligors distinct and several duties, "words of plurality, such as we bind ourselves, will not make the contract joint." 1 Addison, Cont., 86. "In the construction of contracts, the court will look at all the circumstances of the case, the nature of the property, the occupation and relation of the parties, the usages of the place and of the business to which the contract relates, and ascertain, by reasonable inference, what the parties must have understood and mutually expected at the time of the making of the contract, and then adopt that construction which will best and most nearly carry the contract into effect as they intended and understood it." *Dwelley v. Dwelley*, 143 Mass. 509. As we said concerning a contract of shipment in *Leonard v. Railroad*, 54 Mo. App. 301, we must in this case "adopt the rule we ordinarily apply to the interpretation of contracts; that is, to look into the circumstances surrounding the transaction and connected with its making, including the object in view and the nature of the performance required." It is not necessary for us to divide this contract into two parts and construe each separately; and, therefore, it it not incumbent on us to say whether we are of the opinion that that portion of the contract whereby defendants agreed to furnish suitable land and sufficient water for the use of the business designed to be started was a joint obligation upon defendants. But we may, with every degree of propriety, assert that there is no legal impediment to the parties so contracting, as that one part of the obligation imposed by the contract may be joint and another part may be several. We say there is no principle or rule of law which will prevent parties from so fashioning their contracts, if they so

desire.   So, then, we must construe that portion of the
contract now before us for enforcement, and say
whether it, under the rules of interpretation which we
have stated, can fairly be said to impose upon defend-
ants a joint obligation to pay the whole amount sub-
scribed by all of them.   In the first place, what could
be the object of the defendants specifying the amount
opposite each of their names, if it were not that the
amount of liability was limited by the amount so speci-
fied?   If the amount was not so limited, and was not
so intended and understood, it would have been much
more direct and simple to have merely subscribed to
the contract without more.   When the subscribers set
opposite their names the amount of their subscription,
it as effectually limited the liability of each as if such
amounts had been, in words, limited in the body of the
contract.   If this contract is joint, then, as before
stated, it becomes, under our statute, both joint and
several, and as a result of this, each subscriber becomes,
in effect, a surety for every other for the amount which
that other might subscribe.   And thus the first sub-
scriber to attach his name (and it must be remembered
that the names were attached at different times and
places) would become surety for persons whom he had
no present means of knowing and for amounts which
he had no means of ascertaining.   To suppose that the
subscribers could have intended such an unbusiness-
like result, not to say such unreasonable consequences
from their acts, is hardly within the limits of probabil-
ity.   And to suppose that plaintiffs could have so
understood that they were asking such an obligation
would not be unlike supposing them capable of asking
a stranger to obligate himself for unknown persons for
unknown amounts.   This question has been before sev-
eral of the courts of the country in several instances,
the plaintiffs here being one of the parties, and has

received the construction we have given it. *Davis & Rankin v. Barber*, 51 Fed. Rep. 148; *Davis & Rankin v. Belford*, 70 Mich. 120; *Frost v. Williams* (South Dakota, January 21, 1892); *Gibbons v. Grinnell*, 79 Wis. 365; *Gibbons v. Bente*, 51 Minn. 499; *Price v. Railroad*, 18 Ind. 137; *Landwarten v. Wheeler*, 106 Ind. 523.

In the first case just cited, the following remarks of the learned judge delivering the opinion are so applicable to the contract here, and to the facts surrounding its execution, that we transcribe them: "In this case, there are sixty-one subscribers to the contract. The amounts placed after the subscribers' names vary from $25 to $100. Presumably they were interested in agricultural pursuits, scattered over a considerable extent of territory in Clay county, and of varying ages, habits and pecuniary circumstances. The amount to be raised was $4,500. It is apparent from reading the contract that, when one placed his name thereto for $25 or $100, he did not intend to become solely liable for the whole $4,500. And it is equally clear that the first subscriber did not intend to become liable for the amount subscribed by each additional subscriber, whoever he might happen to be. That each subscriber became liable for the payment of the amount subscribed by himself, and not for the whole amount, seems to me to be the plain intent of the contract. It must have been so understood by all the parties to it. I can not persuade myself that the defendants understood the contract as making each liable for the whole amount subscribed. The use of words of plurality, such as 'we bind ourselves,' will not make the contract joint when the parties engage for the performance of distinct and several duties. 1 Add. Cont. [Am. Ed. by Morgan], 86. Here each defendant has written after his name the number of shares subscribed for by him and the amount

to be paid by him therefor. Courts ought not to permit isolated words or phrases, importing a joint obligation, to defeat the manifest intention of the parties, as gathered from the entire contract."

The only case we have found opposing this view is that of *Davis & Rankin v. Shafer*, West. U. S. Dist. of Mo., 50 Fed. Rep. 764. The authorities to which we have referred appear not to have been before the court in that case. At least, no reference is made to them in the opinion. The briefs of counsel are not published, and we are not advised as to whether the cases were cited. But we are satisfied that, from a consideration of the entire contract, it ought not to be held that these various subscribers entered into a joint contract for the payment of the different sums subscribed; and are satisfied that the liability of each should be restricted to the sum which he has taken the precaution to place opposite his name. It appears that the subscriptions were obtained by what is known as a canvas, made by one of plaintiff's agents, the subscribers signing at different times and places, necessarily without knowledge as to what subscriptions would be subsequently made or by whom. Under such circumstances it is not reasonable to suppose that either party to the contract should have understood that each subscriber was obligating himself to pay the entire sum.

With the concurrence of the other judges, the judgment will be affirmed.