PEOPLE OF PORTO RICO v. TITLE GUARANTEE & SURETY CO.

(Circuit Court of Appeals, Third Circuit.   August 4, 1910.)

No. 56.

PRINCIPAL AND SURETY (§ 119*)—BONDS—CONDITION SUBSEQUENT—ACTS OF OBLIGEE.

Where plaintiff granted an electric railway franchise to the V. Company authorizing and requiring it to construct a railway between certain points within three years, subject to plaintiff's right to amend, alter, or repeal the rights so granted, and before the expiration of such term the rights were repealed, and the construction of the railway without a franchise would have been illegal, the continued existence of the franchise was a condition subsequent, the failure of which discharged the V. Company's sureties from liability on a bond executed to secure the construction of the road within such time.

[Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 119.*]

In Error to the Circuit Court of the United States for the Middle District of Pennsylvania.

Action by the People of Porto Rico against the Title Guarantee & Surety Company.  Judgment for defendant, and plaintiff brings error.  Affirmed.

At the trial of the cause, the plaintiff having rested, a motion was made by the defendant for a compulsory nonsuit, which the court (Archbald, District Judge) disposed of in the following oral opinion:

ARCHBALD, District Judge.  The disposition of this motion depends in the first instance upon the question whether the case is to be governed by the law of Porto Rico or by that which is familiar to us here in the United States, and known as the common or English law.  There can be no question that the place where the contract is to be performed is the governing thing in determining the law with regard to it.  And that of course depends in its turn upon the character of the contract, and where the contract is to do a certain thing the place where that is to be done is the place that we look to for the law governing it.  For instance, there can be no doubt here that the contract with the Vandegrift Construction Company, in accordance with which this bond was exacted and furnished, was to be performed in Porto Rico.  But that is one thing, and the bond is another.  The bond is an obligation to pay money.  It is not an obligation to do a thing.  It is conditioned upon a certain thing being done, but that also is exterior to the bond.  We look to the contract, which this bond as it were guaranteed, to see the nature of the things that were required of the principal in the bond.  But the surety had nothing to do with that.  This was not a guaranty that the work should be carried out; it was not an undertaking by the defendant company here to do anything of that kind.  It had no opportunity to see that that contract was carried out.  It had to rely entirely for that upon the party for whom it became surety.  Pure and simple, the contract here is a contract to pay money; $100,000 is the obligation of the defendant company according to the terms of the bond, conditioned upon certain things.  When those conditions are broken, liability attaches.  That has got to be kept constantly in mind.  Now, ordinarily, where a person gives a money obligation, it is to be paid where he is; where his domicile is or his place of business.  If it is a note, and is not made payable at bank or a specific place, demand upon him would be made at his business place, or his residence.  If he had no business place, he would be sought out personally.  There he would be required to pay, and if he did not pay, his note would be dishonored.  I can see no difference with regard to a bond or other money obligation.  And a policy of insurance is somewhat similar.  And so here.  We have, and we must keep that constantly in mind, an obligation to pay money.

The cases that have been cited and relied upon to show that the obligation of a surety is to be determined by the place where the contract is to be performed, those cases also being cases as you might say to a certain extent of a money contract, have this distinction: Take the cases where there is a bond for the accounting for moneys to the government, there unquestionably it is at the seat of the government that the money is to be accounted for. Therefore the surety, in undertaking to make good what the principal was to do, binds himself to account there, or to pay if the accounting is not properly done. The government is not called upon to seek him out where he is. It seems to me that in those decisions it is recognized, not only that the principle prevails, but that to a certain extent the cases form an exception, or at least they exemplify the rule and do not depart from it. So with regard to the undertaking by a surety to indemnify a person who had gone onto a bond on appeal; the appeal being taken in the courts of Louisiana and the bond to indemnify being executed in New York. There the solution of the undertaking to make good or indemnify or save harmless the surety in the appeal bond was necessarily to be performed where the damage to the surety accrued, which was in Louisiana, and that also is to be written into that case, and is a distinguishing feature of it. So, as to a guaranty or letter of credit which is given to a person who goes abroad, the obligation or the liability accrues to the extent that the letter of credit is used, and it grows out of the very circumstance that the party to whom it is given draws upon it in that way, and obtains credit and money abroad, that the guaranty is to be there met and performed.

Now in this case, as I have already said, the defendant company did not undertake to carry out the contract in Porto Rico—the construction contract under the franchise that was given to the Vandegrift Construction Company —in case the Vandegrift Construction Company did not. Neither did it undertake to indemnify or save harmless the People of Porto Rico for the failure of that company to so comply. It simply agreed to pay a definite, specific sum of money, which is now demanded of it, in case the conditions were not complied with—in case the company failed to perform that agreement. To illustrate the difficulty that would accrue if it were the case that an obligation of this character is to be governed by the place of performance of the contract which it assumed or became surety for: Suppose the construction company, the principal in the bond, was to build a railroad in the Sahara Desert, an example which I suggested to counsel in the course of the argument, what would be the law that would govern then? Are we to seek out and find the law that prevails there, where possibly there is no law? Or suppose it was to build a pipe line in the Madagascar oil fields; is the law of Madagascar, whatever it may be, if there is any, to be the contract? It is true we have possibly a little different situation here, and these no doubt are extreme cases; but at the same time we have got to square ourselves and see where we are before we lay down a principle which is to be of general application.

Looking to the character of this, which, as I repeatedly have said, is simply an undertaking to pay money, its solution is here demanded of the defendant company and is to be made here. The defendant is not called upon to go with the money to the island of Porto Rico and there tender solution of its bond. If it was a note, the dishonor of it would occur here. The party who held the note would come and demand payment here. Payment is now being demanded here. It is peculiarly true, also, as I might say, although possibly I am insisting too much upon this, but it comes to me, that the defendant here is a corporation, not an individual. I do not know on principle that that makes any difference, except simply to emphasize the circumstance. A corporation is domiciled where it has its corporate existence, and the defendant company is a corporation and citizen of the state of Pennsylvania. It does business here. It sends out its agents elsewhere, and it must become responsible, of course, according to what its agents do in different parts of the world; but at the same time, when it gives an obligation, or a bond, agreeing to pay a certain amount of money, the presumption is, without something else governs it, that it is to pay here—that its liability is to be according to the law by which it is governed here, not abroad, unless there is something that should control it. It is true in this case that the undertaking was with the People of Porto

Rico, a municipality on a distant island, and also that there was to be an approval of this bond there. That is a circumstance that is not to be lost sight of, but it seems to me that it is not controlling. The approval of the bond was merely a signification by the proper officers that the bond was acceptable to them in form and substance—that the sureties were accepted. But that did not alter the circumstance that the defendant company as surety had already become obligated. The surety could not withdraw from that, having once signed and sealed it and parted with it. It was not as though this surety company was making a commercial proposition, as we might say, by letter or in any other form, that was only to become binding upon it in case it received the acceptance and approval of the party to whom it was addressed. This was a perfect obligation when it left the hands of the corporation, and the action of the officials in Porto Rico was merely an indication, a formal indication, called for by the franchise ordinance, that they were satisfied with the responsibility of the surety and with the character of the bond as it read, and that it complied sufficiently with the ordinance to warrant their approval. All these things, and possibly others that might be suggested, it seems to me are controlling in this case, and determine that the place of solution of this bond, of this contract, is here, the payment to be made here, and that, therefore, the law here is the law which, in entering into the bond, it must be assumed that both parties understood was to govern the People of Porto Rico as well as the sureties. In going abroad, if you please, to get security for this work, or, putting it a little more favorably to the plaintiff, the People of Porto Rico, in accepting as a surety on the bond of the Vandegrift Construction Company a corporation of another country, must be assumed to have been satisfied to accept liability upon that bond in accordance with the ordinary rule which prevails that the law of the place of solution—that is to say, the place of performance of that particular obligation—was to be the guiding law in determining responsibility. If I am correct in this view, and that the law of this country rather than the law of Porto Rico governs the liability upon this bond, then it follows naturally that the plaintiff has made out no case.

I do not rest this upon the circumstance that no actual damage has been shown. If that were all, there would be this to be said: That, in the first place, the plaintiff would be entitled to recover nominal damages, which would save a nonsuit possibly, and, on the other hand, I would certainly open the case and give the plaintiff an opportunity to prove substantial damages, if it was in a position to do so. But when we come to determine the responsibility of the defendant on this bond by the law which prevails here, it seems to me that there can be no doubt in the mind of counsel as to what the result must be. The effort has been to escape from that as to which I think there is no escape. Under our law an agreement between the principal and the party to whom the obligation of suretyship is given cannot be materially modified without releasing the surety. That is to say, the surety undertakes to become responsible upon a certain contract, or in accordance with the terms of that contract; that is the full extent of its undertaking. It does not undertake to become responsible for another contract which may be made between the parties; and that virtually is the case when there is a material modification in the existing contract at the time the obligation of suretyship was entered into.

In this case by the two ordinances which were subsequently passed there were very material changes made in the existing contract between the People of Porto Rico and the Vandegrift Construction Company. That it seems to me is as clear as need be. The amending ordinance of the 7th of July introduced new and different provisions, perhaps the most serious one of which was that upon the failure to comply with the particular terms and conditions introduced by the amendment of the fifteenth section of the original ordinance there would be a right of forfeiture, which did not exist under the original contract. Further than that, we have the subsequent ordinance by which all rights under the original were wiped out. I do not doubt that there are some cases where, notwithstanding what may be called the abrogation of an agreement, there may be some responsibility still remaining against the surety upon it; but I do not need to go into that at length, because, if there are any such cases, I do not see that the one we have here comes within any such exception. Here, while the three-year term under which the parties possibly

had a chance to make good was still running, the whole thing was wiped out. They had no chance or possibility after that to do anything. It may be that the delays which had been encountered deserved action on the part of the People of Porto Rico; but that does not enter into the case. When we come to consider the obligation of the surety, all rights, franchises, and privileges under the original ordinance were gone. The People of Porto Rico evidently desired, as they subsequently did, to look to somebody else and get rid of those with whom they had entered into an arrangement by the original ordinance. They reserved the right in the provision of the thirtieth section to annul and abrogate the rights, privileges, and concessions granted, or to amend and alter them.

It has been contended that that justified what was done under the two ordinances to which I have referred. But it does not seem to me that that is a proper construction of that privilege. It reserved the right to recall, as was eventually done; that is to say, to cancel the concessions which had been given. But in doing that they could not take back, and at the same time hold the parties to the performance. They might do one or the other. They might even get new parties to take up the burden that they compelled the other party to lay down; but they could not absolutely wipe out the relations between themselves and the principal in the bond, and then hold the surety because the principal had not performed.

These considerations seem to me to result in simply one thing, and that is that the plaintiff here has no case under the facts which have been proven, and that, therefore, it becomes my duty, which I cannot avoid, to so declare, and to enter the compulsory nonsuit which is asked.

William Jessup Hand, for plaintiff in error.

Severo Mallet-Prevost, John G. Johnson, Williard, Warren & Knapp, and O'Brien & Kelly, for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and BRADFORD, District Judge.

BUFFINGTON, Circuit Judge. In the court below the People of Porto Rico brought suit against the Title Guarantee & Surety Company on an indemnity bond in $100,000, conditioned as noted below. At the close of plaintiff's testimony that court granted a compulsory nonsuit, and on its refusal to take it off plaintiff sued out this writ. The subject-matter of the controversy, the possibility of the contract being governed by foreign laws, and the variety of questions suggested have resulted in briefs of scholarly and unusually interesting character. But to our mind the crucial point of the case falls within such narrow limits and is ruled by such plain and well-established principles that, without entering into the tempting field of questions suggested, we confine ourselves to the precise one involved.

By ordinance of March 2, 1903, the People of Porto Rico, duly acting by the executive council, granted to the Vandergrift Construction Company, a corporation, and the latter accepted, a franchise to construct a certain electric railway and electric works in the Island of Porto Rico. The ordinance was conditioned on the full completion of the railway and works within three years thereafter, and provided, by section 30, that:

"The rights, privileges and concessions herein granted shall be subject to amendment, alteration or repeal by the executive council."

After certain amendments not here material, as the surety company neither knew of nor assented thereto, the executive council, on Febru-

ary 24, 1905, averring therein that "by the terms and conditions of said grant as the same was passed  *  *  *  and accepted by the said grantee, the said franchise, privilege or concession, and all of the rights, grants, or privileges thereunder or appertaining thereto, have been and now are, at the option of the executive council of Porto Rico, subject to revocation, forfeiture or repeal," by ordinance enacted that the ordinance of March 2, 1903, and "all the rights and privileges appertaining or appurtenant thereto, are hereby revoked and forfeited to the People of Porto Rico  *  *  *  under the general provisions of section 30 of said ordinance." Whether such repeal was valid or otherwise is a question not before us. That it was valid was and is the position of the People of Porto Rico. That the right of repeal is "not limited as to occasion in any manner" is the language of its counsel, and all parties have seemingly acquiesced in that view. The grantee of the franchise surrendered it, and the latter has reacquired the grant. There is no proof in the case that it has suffered any damage from the nonexercise of the franchise by the Vandergrift Company, and it was stated at bar the railway was subsequently built by another grantee. As we have seen, the reacquiring of it by the island was more than a year before the three years expired which were given to build the works requisite to the use of the franchise. In this state of facts, the plaintiff sought by this suit to recover the penalty on this bond of the defendant, viz.:

"Know all men by these presents that we, the Vandergrift Construction Company, a corporation duly organized under the laws of the state of New Jersey, hereinafter called the principal, as principal, and the Union Surety & Guarantee Company, of Philadelphia, a corporation duly organized under the laws of the state of Pennsylvania, and the Title Guarantee & Trust Company, of Scranton, Pennsylvania, a corporation duly organized under the laws of the state of Pennsylvania, hereinafter called the sureties, as sureties. are held and firmly bound unto the People of Porto Rico, hereinafter called the obligee, in the sum of one hundred thousand dollars, good and lawful money of the United States, for the payment whereof said principal, binds itself and its successors, and said sureties bind themselves and their successors jointly and severally firmly by these presents.

"Whereas, by virtue of a certain ordinance enacted by the executive council of Porto Rico, on the 2d day of March, 1903, and approved by the Governor of Porto Rico on the 3d day of March, 1903, granting to said principal the right to build and operate a line of railway between the municipality of San Juan and the Playa of Ponce in the Island of Porto Rico, and to develop electric energy by water or other power for distribution and sale for railway, lighting and industrial purposes, a copy of which ordinance is hereto annexed, the said principal has undertaken and agreed to build and put in operation a line of railway between the municipality of San Juan and the Playa of Ponce, in the Island of Porto Rico, and to build and equip power plants to develop electric energy for the operation of said railway and for other purposes within the period of three years from the date of the acceptance of the said ordinance by the said principal:

"Now, therefore, the condition of this obligation is such that if the said principal shall within three years from the date of the acceptance by it of said ordinance fully complete the work therein authorized in accordance with the conditions therein contained and in accordance with the plans and specifications therefor approved as therein provided; and within the said period of three (3) years from the date of the acceptance by it of the said ordinance shall build, complete and have in operation the entire line of railway authorized therein for such terminal in the municipality of San Juan as may be de-

termined by the said executive council to its terminal on the Playa of Ponce on a route from Ponce to be determined by the said executive council in accordance with the conditions in said ordinance contained, and in accordance with the plans and specifications therefor approved, as in said ordinance provided, and within the said period of three (3) years from the date of the acceptance by it of the said ordinance, shall also complete and have in operation the entire power plant and transmission lines necessary for operating the said entire line of railway, in accordance with the conditions therein contained, and in accordance with the plans and specifications therefor approved as therein provided; and shall duly perform within the said period of three (3) years, all other terms and conditions in said ordinance required to be performed by the principal within the same period; and shall pay to the obligee any loss or damage accruing against the said obligee by reason of the construction of the works in said ordinance authorized at any time during the period of construction therein limited and before the completion of said work shall have been certified by the Commissioner of the Interior, as in section 35 of said ordinance provided—then this obligation shall be void, otherwise to remain in full force and effect."

Such being the condition of its undertaking, can the obligee in the bond, who has without the knowledge or consent of the surety repealed the franchise, still hold the surety in damages for the noncompletion of a railway which possession of the franchise alone enabled the principal to lawfully build? We think the statement of the question is its own answer. This bond was given for the performance of work which could only be done under the franchise. The continuance of the franchise by the plaintiff was therefore an implied prerequisite to its calling on the surety to perform. To hold otherwise would be to say that if the obligee a year, a month, or a day after the franchise was granted, repealed it, it could still hold the surety to build the disfranchised road. It would in effect be demanding bricks without furnishing straw and be contrary to the common sense of right and wholly at variance with the uniform holdings of courts.

In the United States v. Arredondo, 31 U. S. 744, 8 L. Ed. 547, there came in question, after the cession of Florida to the United States, the validity of a land grant made while Florida was owned by Spain. Such grant was coupled with the condition of the grantees settling 200 Spanish families on the land. It was contended by the United States, as successor to the title of Spain, that the grant was forfeited because "the grantee failed to perform the condition of the grant, which required them to commence the establishment of the 200 Spanish families on the land within three years from the date of the grant." In answer to this the court said:

"The condition of settling 200 families on the land has not been complied with in fact. The question is: Has it been complied with in law, or has such matter been presented to the court as dispenses with the performance, and divests the grant of that condition? It is an acknowledged rule of law that if a grant be made on a condition subsequent, and its performance become impossible by the act of the grantor, the grant becomes single. We are not prepared to say that the condition of settling 200 Spanish families in an American territory has been, or is, possible. The condition was not unreasonable or unjust at the time it was imposed. Its performance would probably have been deemed a very fair and adequate consideration for the grant, had Florida remained a Spanish province. But to exact its performance, after its cession to the United States, would be demanding the 'summum jus' indeed, and enforcing a forfeiture, on principles which, if not forbidden by the com-

mon law, would be utterly inconsistent with its spirit. If the case required it, we might feel ourselves, at all events, justified, if not compelled, to declare that the performance of this condition had become impossible by the act of the grantors—the transfer of the territory, the change of territory, the change of government, manners, habits, customs, laws, religion, and all the social and political relations of society and of life."

Indeed, the statement in 4 Ency. 687 that, "whenever by the act of the obligee performance of the condition is rendered impossible, the obligee will be excused from liability for nonperformance," summarizes the law on the subject.

In Dwelley v. Dwelley, 143 Mass. 509, 10 N. E. 468, it was held that where an obligee sought to sell real property under a bond and mortgage, conditioned for maintenance of the obligee, as the contract contemplated such maintenance should be furnished on the land in question, the obligee, who had left the land, was not entitled to foreclose for nonmaintenance. To the same effect are McKillip v. McKillip, 8 Barb. (N. Y.) 552, and Howe v. Hose, 10 N. H. 89.

In Stewart v. Cuyler, 17 Barb. (N. Y.) 482, a bond was given which provided in case of a dispute as to the amounts to be periodically paid for support, for a reference to a county judge for determination. The obligee having requested the judge not to act, it was held he could not recover for breach of the bond.

And in Pindar v. Upton, 44 N. H. 358, it was said:

"It is a settled principle that whenever, by the terms or nature of a condition, it cannot be performed without the precedent or concurrent act of the obligee, and he neglects or refuses to perform such act, the condition is saved."

So, also, in People v. Bartlett, 3 Hill (N. Y.) 570, it was said:

"Baron Comyn lays down the rule that the performance of a condition shall be excused by an obstruction of the obligee or by an interruption of the performance by him"—citing Com. Dig. Title Condition (L. 6).

Moreover, performance by the surety company became impossible not only by the hindrance of the obligee, but also by the act of law, which, as it is sometimes expressed, "repeals the covenant." "When a party," holds Bradford v. Jenkins, 41 Miss. 334, "agrees to do a particular thing which is lawful at the time, and the Legislature comes in and makes it unlawful, here the law absolves from the obligation, or, as sometimes expressed, 'repeals the covenant.' " This has the support of authority:

"If the condition be possible at the time of making it and afterwards becomes impossible by the act of God, the act of law, or the act of the obligee himself, then the penalty of the obligation is saved; for no prudence or foresight of the obligor could guard against such a contingency." Blackstone's Commentaries, 341; Irion v. Hume, 50 Miss. 426, and Bain v. Lyle, 68 Pa. 60, where it was held:

"If by act of law the performance of the condition becomes impossible, upon every principle the bond is saved. Co. Litt, 206a."

Applying these principles to the case in hand, it is clear there can be no recovery on this bond. Both by the act of obligee and by act of law it became impossible, before the three years leeway of the bond, for either principal or surety to lawfully build this road. The

power to repeal was reserved and exercised. By that repeal the right of the construction company to, within the three years' term of the bond, complete this road, was taken away. Possibly, for there is no proof to the contrary, the surety could have constructed the road within the three years, and the prevention thereof by the repeal of this ordinance presumably injuriously affected the rights of the surety. "A surety may be discharged by the doing of an act which is legally injurious to the surety, or which impairs his legal rights." Dwelling-House Co. v. Johnston, 90 Mich. 170, 51 N. W. 200. Such being the law, and the island having seen fit to repeal this ordinance and thereby materially and adversely affect the legal rights of the surety without its consent, it follows the surety was released. The repeal of the franchise put an end to the undertaking of the construction company and rendered it impossible for it or its surety to thereafter lawfully construct the work for which this bond was conditioned. The general rule, supported by the best elementary writers, is that:

"When an act of the Legislature is repealed, it must be considered, except as to transactions past and closed, as if it never existed." Ex parte McCardle, 7 Wall. 510, 19 L. Ed. 264.

These authorities conclusively settle this case if the bond in suit, which was executed, acknowledged, and delivered by the surety company in Pennsylvania, is a Pennsylvania contract. If it be deemed a Porto Rican contract, we have been referred to no Spanish or other authorities which hold to the contrary.

The judgment is therefore affirmed.