## FIELD v. SMALL.

1. PRINCIPAL AND AGENT.—When a special agent for the sale of real property exceeds the scope of his authority his prinicpal is not bound by the unauthorized act.
2. POWER TO SELL, NOT AUTHORITY TO GIVE OPTIONS.—Giving an agent authority to sell real estate at a fixed price does not of itself authorize such agent to give a third party a mere option to purchase.
3. RATIFICATION OF UNAUTHORIZED ACT.—Before a person can be bound upon the ground of ratification of an unauthorized act of an agent, it must appear that the principal had full knowledge of all the material facts affecting her interests in the transaction.

*Appeal from District Court of Pueblo County.*

ACTION for the specific performance of a contract. The contract is evidenced by the following written instrument :

"PUEBLO, Colo., Jan. 6, 1887.

" Received of C. H. Small, agent, fifty ($50.00) dollars, being a payment on block 43, Pueblo, Colorado, corner of High and River streets. Terms of purchase being two thousand ($2,000.00) cash, assume mortgage of Dr. McDon-

ald ($2,500), balance $5,000, to be paid in two years at 8 per cent. These terms to be fully carried out by said C. H. Small, agent, within sixty days, or sale to be void. If said terms are carried out by said C. H. Small, agent, within specified time, then Thomas M. Field, agent for Amanda E. Field to furnish Warranty Deed and Abstract, showing clear title to C. H. Small, agent. Whole price to be paid, $9,500.

" (Signed)          THOS. M. FIELD."

It is alleged in the complaint that Thomas M. Field was at the time of the making and subscribing of said agreement for the sale of the real property aforesaid, the agent of the defendant Amanda E. Field, and was lawfully authorized by said defendant for her and in her behalf to make and enter into such agreement and to sign the memorandum thereof. (This was before the amendment requiring such agency to be in writing. Sess. Laws 1887, p. 274.)

The defendant admits in her answer that her husband, Thomas M. Field, was her agent for the sale of this property, but denies that he was authorized to give the terms, mentioned in the instrument, sued upon. She alleges that being in pressing need of $2,000 in cash she authorized him to sell the property for not less than $10,000, provided she should receive an immediate cash payment of $2,000, and that his authority in the matter was strictly limited accordingly. She denies that the sale was concluded upon the terms set forth in the memorandum and alleges that the signature of Thomas M. Field, her husband, to the receipt was obtained fraudulently, in total ignorance of its contents while he was in a condition of gross intoxication from excessive and protracted drinking, and upon the representation and assurance that the sum of $2,000 in cash, together with the deed for her signature, would be sent to her immediately. She avers that she had tendered back to plaintiff the fifty dollars paid to her husband, but that plaintiff had refused to receive the same. She also renews this tender.

The plaintiff in her replication denies that any fraud or

imposition was practiced upon Mrs. Field, and claims that defendant, with full knowledge of the terms of the sale embodied in the memorandum, ratified and confirmed the transaction.

The trial upon these issues resulted in a decree in favor of plaintiff for the conveyance of the property mentioned in the memorandum upon the terms therein specified.

Mr. CHARLES E. GAST and Messrs. RUCKER & TITCOMB, for appellant.

Messrs. WESCOTT & McDANIEL, and Messrs. WELLS, McNEAL & TAYLOR, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

Considerable testimony was elicited upon the trial in the district court. This testimony was introduced largely upon the question of actual fraud in the procuration of the original memorandum from Mr. Field. The testimony from the defendant going to show that at the time of the transaction and for some time prior and subsequent thereto, Mr. Field had been in a state of gross intoxication, utterly unfit to transact business of any kind. The plaintiff, while admitting his intoxication to a certain degree, endeavored to show that at intervals he was capable of transacting business, and that at the time this memorandum was made he was sufficiently sober to understand its full scope and effect.

It is conceded that at the time of the purchase of this property by Mr. Small for his wife, he was the agent of Mrs. Field, and that for some time previous to this date he had had charge of collecting the rents, paying the taxes, etc., upon her property in Pueblo, including the property in controversy in this action. At the time the memorandum was signed it is apparent that Small was the agent for the sale of this property and that he had been endeavoring to procure a purchaser for the same for some days prior thereto. It is con-

tended upon the one hand and denied upon the other that he acted as such agent in selling the property for Mrs. Field while purchasing the same as the agent for his wife. We are of the opinion, however, that the case may be determined purely upon the legal questions involved, regardless of the proof upon the issues just enumerated.

The entire case may be disposed of upon consideration of two questions:

First.—Did Thomas M. Field have authority to bind Mrs. Field in the manner designated in the instrument bearing date January 6th?

Second.—If not, was she bound by a subsequent ratification of its terms?

It is claimed that there is such a variance between the instrument executed by Thomas M. Field and the contract he was authorized to execute, as to invalidate the former. The proof shows beyond doubt that Mr. Field was a special agent for the sale of the property. As such agent he was authorized to sell only upon the following conditions: First,—For a price not less than $10,000. Second,—Of the purchase price not less than $2,000 was to be paid Mrs. Field in cash. Third,—The deferred payments were to draw 10 per cent interest per annum.

That these were the instructions upon which alone he was authorized to act, is conceded. And we think the evidence sufficiently shows that the extent of his agency was known to Mr. Small at the time of the negotiations, although this is quite immaterial. An examination of this memorandum discloses that Mr. Field, in executing the same, exceeded his authority as to price, agreeing to accept an amount less by $500 than the sum for which he was authorized to make the sale. That instead of providing for a cash payment of $2,000 he accepted $50, agreeing to give 60 days upon the remaining $1,950 of the amount. The instrument provides for only 8 per cent interest per annum to be paid upon the deferred payment, instead of 10 per cent. And finally the instrument signed confers a mere option to purchase.

This variance in terms was at the time wholly unauthorized and rendered the original agreement invalid as to Mrs. Field. We need not look beyond our own decisions for authority in support of this conclusion. In the case of *Speer v. Craig*, 16 Colo. 478, the agents were authorized to sell for $2,200, the purchaser to pay $700 down and the balance in one, two and three years, with interest at 8 per cent per annum upon the deferred payments.

The contract made provided for a payment of $1,000 in cash and $1,200 in one and two years at 8 per cent interest. Although the variance was not so great as in the present instance, the court held the contract of sale could not be enforced against the owner of the property. This conclusion was reluctantly reached, as the conduct of the owner did not meet the approval of the court. Counsel at the oral argument admitted that Mrs. Field could not be held under the original instrument in the absence of proof of ratification, and as this also seems to have been the opinion of the trial court we will no longer dwell upon this question.

Mrs. Field, upon the 18th day of January, wrote Mr. Small a letter. It is upon this letter that a ratification of the terms of the instrument of January 6th is mainly if not entirely based. The letter must be viewed in the light of the circumstances under which it was written. Mrs. Field being in pressing need of money and not having heard anything of Mr. Field since his departure from Denver on the 1st inst., wrote Mr. Small with reference to the matter. In this letter she expressed fear that he may have fallen into his old habits of drinking, and asking Mr. Small to look after him. To this letter Small answered as follows:

" Jan'y 8–7.

" Mrs. A. E. FIELD, Denver, Colo.:

" Dr. Madam:—Yours of 7th received. Mr. Field left yesterday in fair condition for the Brooks farm to spend two or three days, from here he will return to Denver. Before leaving he closed the sale of your lots in block 43 to me; the terms of sale were as follows: $2,000 to be paid in 60

days, I assume the loan of Dr. McDonald, $2,500, and the balance $5,000 in two years at 8 per cent.   I paid Mr. Field $50 on account, which he left with Mr. Douglass to take care of.

" Mr. Field wished me to tell you to accept the offer of $250 for the press, also $6.50 for hay in stack.

" With kind regards, I am,

" Yours truly,

" CHAS. H. SMALL."

Field returned home on 10th inst., suffering at the time from the effects of a protracted spree.   It was several days before he was able to leave his bed.   During this time Mrs. Field made repeated efforts to learn the particulars of the sale. In answer he replied upon each occasion that he had sold the property to Small upon the terms authorized by her, except as to the rate of interest upon the deferred payments, and as to this he had agreed to accept 8 per cent instead 10 per cent, that the total consideration agreed upon was $9,500 which was equivalent to $10,000, less 5 per cent commissions, which would have gone to Small had he made the sale to a stranger; that $2,000 of this amount was to be paid in cash, and that this amount less the $50, received by him was probably to her credit in the First National Bank of Denver with a deed for her signature, or would be at once sent there.   She went to the bank and not finding the money immediately telephoned to Small's office in Pueblo and received a reply from Lowe, the man in charge.   The message and answer read as follows:

" Mrs. FIELD,—Have the papers and the money been sent in regard to Block 43 ?"   Answer—" They haven't been sent.   Mr. Small is not well, but as soon as he is able to attend to it, it will be attended to."   Mrs. Field says this answer satisfied her.   That she thought Small would send the money as soon as he was able to be out and raise it, and with this understanding she went to the bank and obtained an extension of time for a few days upon her note.

Upon Jan. 18th Mrs. Field, not having heard further from

Mr. Small, sent the letter upon which a ratification is claimed. This letter is as follows:

"Denver, Jan. 18, '87.

"C. H. SMALL, Esq., South Pueblo, Colo.

Dear Sir:—Mr. Field reached home safely and has been expecting the papers pertaining to the block. You wrote me the terms and I then thought Mr. Field had traded with Mr. Brooks and received some money or he would not have consented to so much time. I need, and will be obliged to have nearly $2,000, hence my consent to sell the block now. I do not think 8 per cent enough, as you are aware you could not borrow on the property for me for less than 10 per cent, but if Mr. Field agreed to 8 per cent it is all right. I thought he was trading with another party and I thought I had you to see that he did not make a bad trade. I wish you would hurry the matter as much as you can as I must raise some money in a few days.

I am sorry that you are troubled with that most annoying of troubles, the rheumatism. I can sympathize with you. Please write and advise me as to when I may expect papers and money.          Very truly,

"Mrs. A. E. FIELD,

"Box 2781.          .          Denver, Colo."

Appellees contend that in this letter Mrs. Field consented to the extension of time and that with this consent the letter amounts practically to a ratification of the memorandum agreement of Jan. 6th.

Before a person can be bound upon the ground of ratification of an unauthorized act of an agent, it must appear that such person had full knowledge of all the material facts affecting such person's interests in the transaction.

Mrs. Field, at the time of writing the letter of Jan. 18th, not only did not have the full information necessary for her to act advisedly, but was actually misinformed upon two points. She understood that Small had purchased the property from Mr. Field, whereas he held only a mere option to purchase.

Second. Mrs. Field believed that Small himself was the purchaser and not his wife.

As to the first point: The memorandum is not signed by either Mr. or Mrs. Small. It contains no promise on the part of either of them. If, at the expiration of 60 days, Mrs. Small had declined to take the property, she would have forfeited the $50 already paid and this would have been the extent of her liability. Mr. Field seems to have supposed that a contract of sale had been executed binding upon Small and he informed Mrs. Field that such was the fact. The letter of Jan. 8th, written by Small to Mrs. Field, did not enlighten her mind as to the nature of the transaction in this respect. On the contrary, the language used is calculated to convey the idea that a contract of sale had been entered into binding upon Small. Mrs. Field had repeatedly refused to give any option upon this property, and a few weeks prior to this very transaction she declined to sign an option which Small had prepared for her signature. And it is not to be doubted that if she had known of the contents of the instrument signed by her husband, as her agent, she would have promptly repudiated the same. Under these circumstances she cannot be held to have ratified the instrument of Jan. 6th, by her letter of Jan. 13th. *Baxter v. La Mont*, 60 Ills. 237.

As to the second point: Both her husband and Mr. Small informed her that he (Small) was the purchaser. The testimony shows that Mrs. Field had been acquainted with Mr. Small for many years, that he had been her agent for the collection of rents, the payment of taxes, and for the sale of this and other property. That she expected him to assist Mr. Field in the sale of this very property. She had confidence in his business management, and may have relied upon his financial responsibility. Under such circumstances it was quite natural that she should have been willing to make some concessions to him that she would not have made to others. Only a small proportion of the purchase price was to have been paid down. She may have been perfectly will-

ing to accept Small's notes for the deferred payments and quite unwilling to have taken those of his wife.

Soon after the letter of the 18th inst. was written, a dispute arose between the parties, in reference to the instrument of Jan. 6th, and Mrs. Field repudiated the entire transaction and offered to refund the money paid by Small.

We think the district court erred in holding that Mrs. Field had ratified the instrument executed by her husband. For this error the judgment will be reversed and the cause remanded.

*Reversed.*