[No. 5157.]
[No. 2755 C. A.]

THE CONQUEROR GOLD MINING AND MILLING COMPANY
v. ASHTON ET AL.

1. **Corporations—Agents—Extent of Authority—Notice.**
   Where the board of directors of a corporation is vested with the general management of its affairs, a person doing business

with an alleged agent of the company is bound to take notice of the extent of such agent's authority.—P. 138.

**2. Corporations — Officers.— Scope of Authority — Unauthorized Contracts.**

The power to make a contract binding a corporation to pay a certain sum to lessees for a surrender of their rights under an alleged lease is not incidental to the office of president and general manager, and such a contract is not binding on the corporation in the absence of evidence of authority to make it or of its ratification by the company.—P. 138.

**3. Same—Ratification.**

A contract, made without authority by the president and general manager of a corporation, cannot be ratified by the board of directors unless the board has full and complete knowledge of its terms and conditions.—P. 138.

**4. Contracts—No Consideration.**

An agreement by the owner of property to pay a certain sum to an alleged lessee for the surrender of his rights under a void lease, is not supported by a valuable consideration.—P. 139.

**5. Practice in Civil Actions—Corporations—Officers—Scope of Authority—Contracts—Burden of Proof.**

In an action against a corporation on an agreement made with an alleged agent or officer, the burden is on plaintiff to prove that such person had power to make the agreement.—P. 139.

**6. Corporations—Contracts—Failure to Repudiate.**

In an action against a corporation on an agreement made by its agent, plaintiff cannot rely on the corporation's failure to repudiate the contract unless it is shown that the latter had an opportunity to either ratify or repudiate it.—P. 139.

**7. Practice in Civil Actions—Corporations—Officers—Contracts —Instructions.**

Where, in an action against a corporation on a contract made by one of its officers when its directors had exclusive power to make such contracts, there was no evidence that the directors knew of the agreement, it was error to give an instruction that, "as a general rule, what the directors of a corporation know regarding the matters affecting its interests, the company knows; and the knowledge of the directors may often be inferred from circumstances, and it is not always necessary to show direct proof."—P. 139.

**8. Licenses — Right to Enter upon Lands — Non-transferable — Silent Partner.**

Where a corporation granted a license to two persons to enter on its premises for certain purposes, and the license re-

cites that it was non-transferable without the permission and ratification of the company, a third person claiming to be a silent partner with the holders of the license can obtain no benefits thereunder in the absence of showing that the corporation assented to his interest by an assignment in part of the license. —P. 141.

9. Corporations—Officers—Contracts—Consideration.

An officer of a corporation, without authority so to do, made a verbal lease of a portion of the company's property to two persons. Afterwards, the corporation gave to one of the lessees and a third person a written license to enter upon the premises to do certain tunnel work, and the latter entered thereon and performed such work. Thereafter a succeeding officer of the company, also without authority, agreed to pay the lessees for the tunnel work done, in consideration of their surrendering their rights under the lease. Held, that such work, having been done by one of the lessees and a third person under the license, did not accrue to the benefit of the corporation by virtue of the lease, and, therefore, constitutes no consideration for the agreement to pay them for such labor.—P. 142.

## Appeal from the District Court of Clear Creek County.

### Hon. A. H. DeFrance, Judge.

Action by Evan Ashton and John H. Atkinson against The Conqueror Mining and Milling Company. From a judgment for plaintiffs, defendant appeals. *Reversed.*

Messrs. MORRISON & DE SOTO and Mr. A. W. GILLETTE, for appellant.

Mr. J. J. WHITE, for appellees.

Mr. JUSTICE CASWELL delivered the opinion of the court:

From a judgment in favor of Evan Ashton and John H. Atkinson, appellees (plaintiffs below), the Conqueror M. & M. Company (defendant below) appeals.

The complaint alleges in substance that in March, 1899, the defendant leased and let unto the plaintiffs certain territory west of the Conqueror's main tunnel belonging to said defendant, including the Patsey vein within such territory, and from the level of said tunnel upwards to the surface.

That, in pursuance of said lease and with the full knowledge of defendant, plaintiffs began doing work, cleaning out an old cross-cut, after which plaintiffs drove the same ahead for seventy-five feet to intersect and cut what is known as the Patsey lode, and that the said lode was cut by such tunnel.

That after the Patsey lode was cut as aforesaid, the plaintiffs were notified by the agent of the defendant company that the defendant had concluded to work the ground itself and agreed that if the plaintiffs would abandon their rights to the ground, the defendant would pay plaintiffs all the money expended for work, labor and material in cleaning out the cross-cut and driving same to intersect the Patsey lode; that the plaintiffs have ground on the same lode as the Patsey, over and beyond the ground of the Patsey owned by the defendant, and for the purpose of avoiding trouble over and concerning said ground, they agreed to accept the proposition, and that they did, on or about the 26th day of June, 1899, quit the ground of the Patsey lode and turned over the possession to the defendant; that the defendant failed and refused to pay the sum of seven hundred and forty dollars ($740.00) as agreed to be paid for the possession of the premises.

The answer specifically denies the allegations of the complaint, and further avers that all work done as described in the complaint was done by one Otto Schraffrath and the plaintiff, Evan Ashton, while working on the defendant's ground under the authority of a written license, dated March 31st,

1899, which license granted right of way only and not a right to mine or take out ore.   The answer further alleges, that the plaintiffs requested the lease of the ground in controversy from the defendant company, which was refused.   Replication of the plaintiffs admits the written license referred to in the answer, but denies that the work was done under and by virtue thereof, and alleges that they already had a lease upon defendant's ground at the time of the performance of the work for which defendant agreed to pay.   There are several assignments of error going to the admissibility of certain testimony introduced by the plaintiffs and also to the instructions of the court, and refusal to give certain instructions requested by the defendant.   The assignments of error principally discussed in the brief of appellant are the refusal to give defendant's instructions numbered three, four and seven, and for the giving of instruction numbered six by the court, as follows:

"As a general rule, what the directors of a corporation know regarding the matters affecting its interests, the Company knows; and the knowledge of the directors may often be inferred from circumstances, and it is not always necessary to show direct proof."

In support of the allegation that the defendant corporation leased in March, 1899, all its territory west of the Conqueror main tunnel, plaintiffs introduced testimony that Mr. Woodrow, then manager of the company, made a verbal lease of such property, and that Mr. Wells, who succeeded him as general manager, agreed to give them a lease upon a portion of the so-called Patsey vein, included in such territory.

It is not shown, nor attempted to be shown, that either Mr. Woodrow or Mr. Wells was authorized

by the directors of the company to lease any of the company's property. It does appear from the record and bill of exceptions that the board of directors was vested with the general management of the company's affairs, including the power to make contracts, and that the president should sign contracts when directed by the board. The power then to make such lease was lodged only in the board of directors, and the plaintiffs were bound to take notice of the extent of the authority of both Mr. Woodrow and Mr. Wells, who were claimed by them to be acting as agents of the company.—*Extension G. M. Co. v. Skinner*, 28 Colo. 237, 239. This case clearly states the general rule.

The board of directors, acting as such, refused to grant a lease upon the Patsey vein. The record does not disclose that the leasing of any of this property to plaintiffs was ever considered by the directors prior to the meeting at which such lease was refused. No lease upon the Patsey vein was repudiated as argued by appellees. The plaintiffs never had such lease, and were never entitled to the possession of any portion of the Patsey vein. The record fails to disclose that Mr. Wells was an authorized agent of the company to make the contract upon which this action was brought. The power to make it was not incidental to his office of president and general manager.

The trial court instructed the jury to this effect upon the evidence adduced at the trial, and this ruling is not assailed. The contract not being within the scope of his authority, was not binding upon the company. The right of recovery then depends upon the ratification, by the company, of the agreement claimed to have been made. There could be no ratification by the board of directors unless it had full and complete knowledge of the terms and con-

ditions of the contract proposed to be ratified. We do not find either in the abstract or the transcript, which we have examined with care, any evidence whatever that the board of directors had, at any time, any knowledge of the alleged agreement of Mr. Wells to pay the plaintiffs a sum of money for releasing their rights under the verbal lease, as claimed by them. We think the verbal lease was of no force or effect and was not binding upon the company, and consequently was not a consideration for any agreement, and no ratification is shown by the record and bill of exceptions in this case. It was obligatory upon the plaintiffs to prove by a preponderance of evidence the allegations of the complaint; and, in dealing with an alleged agent or officer of the company, it was necessary for them to prove that the agent had power to make the agreement sued on. —*Extension Co. v. Skinner, supra; Victoria G. M. Co. v. Fraser,* 2 Colo. App. 14. The plea of failure to repudiate cannot be invoked because it is not shown that the company had any opportunity to ratify or repudiate the contract by its board of directors.

Under the conditions of this case, the sixth instruction given by the court was erroneous and misleading in that there was no evidence whatever upon which it could be based. This court has so often held that an instruction which, though correct, is not based upon evidence in the case is therefore irrelevant and improper, that it is unnecessary to cite authorities. The directors mentioned in this instruction manifestly referred to the board. No facts or circumstances whatever are in evidence from which it might be inferred that the directors knew of the agreement of settlement alleged to have been made by Mr. Wells.

The rules enunciated in this sixth instruction

are rarely to be invoked to support the inference of knowledge upon which a ratification might be based. It has been held that the rule is valuable chiefly as one of circumstantial evidence rather than as a rule of estoppel, and that there is no presumption in law of knowledge on the part of a corporation, but that certain facts and circumstances may be proved from which the jury may find that a corporation, in the exercise of due diligence in the management of its affairs, did know the principal fact in question. If the record disclosed any facts or circumstances upon which such inference might be based, the judgment based upon the verdict of the jury would not be disturbed. It is urged that the company received benefits from the act of the plaintiffs in yielding possession of the leased ground, and that it should be estopped to defend against the contract. The record does not sustain this contention. On the 31st day of March, 1899, and subsequent to the time of the making of the verbal lease by Mr. Woodrow, the plaintiff Ashton and a Mr. Schraffrath obtained from the company a written license to enter upon and use that portion of the company's property described as the Conqueror main tunnel, extending from the tunnel house northwesterly to the Harrison drift, and the Harrison drift extending from the said main tunnel southwesterly. By the terms of this license, the company retained the prior right of way through the main tunnel for all purposes. It is further recited in the written license that the licensees should extract no ore from the territory owned by the first party without having first secured a lease upon the said ore. It is further recited that the second parties enter upon the operation of the license with full knowledge of the caved and dangerous condition of the Harrison drift, and that they assume sole and entire responsibility for any loss of life or injuries

that might be sustained in connection therewith, and it is further recited that the grant or privilege of license should be non-negotiable and non-transferable except with the permission and ratification of the first party. It appears by the testimony of the witnesses of the plaintiffs that Mr. Schraffrath had no interest whatever in the lease upon the territory west of the Conqueror tunnel for the surrender of which Mr. Wells is alleged to have made the agreement, which is the basis of this controversy. It clearly appears by the evidence that all the work which was done in cleaning up the so-called Harrison drift, was done pursuant to the license by one of the plaintiffs and by Mr. Schraffrath. It is true it is claimed by the plaintiffs that Mr. Atkinson was a silent partner in this license, but we do not think that he can take any benefits under it, unless it is shown that the company assented to his interest by an assignment in part of the license. The parties to this grant or license cannot be permitted to vary its terms by parol evidence, and certainly a stranger cannot question its contents. It appears that the purpose of the license was to permit the licensees to work through the conqueror tunnel and lode to get to the Harrison and Rosecrans veins. It appears from the record that after the Patsey vein was cut the drift was continued by the licensees something like one hundred and sixty feet to the Rosecrans vein, which they cut, but not finding pay ore the work was abandoned and no claim was made to any rights for surrendering the alleged lease for eighteen months. The company owned the ore in the Patsey and had the right to mine it. It had the first right to the use of the main tunnel of the Conqueror. Whether or not it was necessary for the Conqueror company to arrange, or whether or not it did arrange, for the use of the Harrison drift, so-called,

between the main tunnel and the Patsey lode, with the licensees, is of no consequence to the plaintiffs in this case. Such use cannot be urged as a consideration for the agreement in controversy in which Mr. Schraffrath has no interest. Further, we think the suit is based simply upon the release of the rights granted by the verbal lease hereinbefore described. It is not claimed that more than one drift was run by either the licensees under the grant mentioned or the plaintiffs herein. We think the evidence clearly shows that all the work done was done under and by virtue of the license, by Ashton and Schraffrath and not by these plaintiffs, and that the Conqueror company took no benefits from their hands. The judgment is reversed.      *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concur.