# September Term, 1909.

[No. 5538.]

## SERVANT ET AL. v. McCAMPBELL.

1. **Bill of Exceptions—Where Necessary**—Affidavits to support a motion for change of venue are no part of the record unless incorporated in a bill of exceptions.—(299)

2. **Evidence—Admissions of Shareholder in Corporation**—The statements of one shareholder in a corporation as to agreements said to be made by all, do not affect the other shareholders.—(299)

3. **Contract—Construction—Joint or Several**—Shareholders in a corporation, owning their shares in severalty, execute a power of attorney authorizing their delegate to sell "the number of shares belonging to us severally," setting against their names the number of shares held by them respectively. They are not jointly liable for the commissions of an agent effecting the sale, under employment of the attorney.—(302-305)

4. **Principal and Agent—Ratification**—A principal will not be held to have ratified the acts of his agent by a mere acquiescence, unless full and specific knowledge of the action of the agent is brought home to him.—(304)

Several shareholders in a corporation appointed one of their number their attorney in fact to dispose of their shares. The attorney negotiated with plaintiff to find a purchaser, promising a certain commission. At each interview with plaintiff the attorney convened as many of the shareholders as were accessible and narrated to them, "in a general way, what he was doing." Held, insufficient to charge the shareholders jointly with the agent's commissions.—(302-305)

5. **Evidence—Burden of Proof**—The burden of proving ratification by the principal of the acts of the agent, rests upon those asserting it.—(304)

*Error to Denver District Court*—Hon. BOOTH M. MALONE, Judge.

Mr. JOHN R. SMITH, Mr. J. G. SCHWEIGERT, Mr. S. H. CALHOUN, and Mr. F. R. McALINEY, for plaintiffs in error.

(292)

Mr. CLAY B. WHITFORD, Mr. HENRY E. MAY, and Mr. WILLIAM YOUNG, for defendant in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

McCampbell, who was plaintiff in the court below and will hereinafter be so designated, sued the other parties to this action to recover commissions as a real estate or mining broker upon an alleged sale of the property of a corporation, The Bull Domingo Mining and Leasing Company, and its capital stock, the latter, except as to a few shares, being then held and owned in severalty by the defendants.

The contention of the plaintiff briefly stated is, that said corporation was the owner of certain mining machinery and buildings, together with a lease on the Bull Domingo mine, a property of great value, situated in Custer county, and operated the same until its machinery and improvements were destroyed by fire. That thereafter said company had no means with which to resume work on said mine and the defendants were unable or unwilling to advance the money necessary therefor. That they were, however, willing to sell the property of said corporation, as well as its capital stock, and to enable them to effect a sale pooled their respective shares for said purpose and delivered the same to defendant Robert Servant, who was duly authorized to negotiate such sale. That while said pooling agreement was in full force and effect, the defendants, through said Servant, employed the plaintiff as a real estate and loan broker to find a purchaser for said property and the stock so pooled; and agreed, jointly and severally, to pay the plaintiff for such service ten per cent. commission upon the sale price. That the plaintiff, together with the aid and assistance of other persons

by him employed for that purpose and who, before suit, assigned their claims to such commissions to this plaintiff, procured a purchaser for said property acceptable to the defendants, and the defendants thereupon sold to said purchaser all of the capital stock and property of The Bull Domingo Mining and Leasing Company for the sum of $100,000; $10,000 cash and the balance to be paid from the proceeds of the mine as the mineral was taken therefrom. The defendants, each for himself alone, denied any joint liability; or any responsibility whatever for any acts of his codefendants; and after making, in substance, a general denial of the material allegations of the complaint, alleged that plaintiff in said transaction acted for, and on behalf of, himself and one Hackstaff, the alleged purchaser; that no *bona fide* sale was made, and that a conspiracy existed between said plaintiff and said Hackstaff and others to cheat and defraud the defendants and The Bull Domingo Mining and Leasing Company.

Motions were filed by defendants for a change of venue upon the grounds that defendants resided in a county other than that in which the suit was brought, and for other statutory reasons named. These motions were denied.

In 1896 the defendants, or their assignors, severally acquired fifty-five per cent. of the capital stock of The Bull Domingo Mining and Leasing Company, in consideration of sinking the main shaft of said Bull Domingo mine to a depth of one thousand feet, such capital stock being apportioned among, and severally issued to, those who had advanced money or materials or performed labor in said work in proportion to their respective contributions. Thereafter the remaining forty-five per cent. of said capital stock was sold at public sale for unpaid assessments on the same and the title thereto placed in, and a

certificate therefor issued to, defendant Robert Servant as trustee.

On April 12, 1897, the defendants, as the owners of said fifty-five per cent. of said capital stock, delivered their respective shares to seven trustees, of whom Servant was one; and said trustees thereupon executed a declaration of trust that they held said stock to be voted as a unit, in and for the interest of the owners, for the period of three years, subject to renewal of said trust at the expiration of the term. This constituted the only evidence of a pooling of said stock, except it was testified that defendant Clark had said that the stockholders "had pooled their stock and placed it in the hands of Father Servant to dispose of, either to get a loan or to sell."

May 6, 1899, certain of the defendants executed a power of attorney by which defendant Servant was authorized "to sell, assign, transfer and deliver all our shares and interests whatsoever in The Bull Domingo Mining and Leasing Company." The power of attorney futher recited, "and setting against our names the number of shares of said stock belonging to us respectively." This instrument further specified that a deal was to be consummated according to a certain memorandum agreement (which, however, was not produced), signed by said Servant and other trustees, with John T. Keegan, dated September 1, 1899.

In September of the same year the other defendants executed a like power of attorney to said Servant. During the fall of 1899 and the spring of 1900 Servant retained possession of the Keegan powers of attorney just referred to, and it is apparent that the negotiations between him and plaintiff were based upon the fact of his possession of such documents and his statements as to his authority. There is nothing whatever in the record to show knowledge or notice

on the part of the individual defendants with respect
to these negotiations, except solely two letters from
defendant Pope to the plaintiff, and these are clearly
personal.    Many letters written to plaintiff by de-
fendant Servant are signed "R. Servant, Sec. & Tr.
B. D. M. & L. Co."    It is evident that during the
period from September, 1899, to March, 1900, the
plaintiff clearly understood that defendant Servant
in negotiating with respect to a sale of said stock
and property, was acting either in his capacity of
secretary and treasurer of The Bull Domingo Min-
ing and Leasing Company, or under the powers of
attorney for the sale of the shares of the respective
owners of the stock in that corporation and who had
given to him the powers of attorney hereinbefore
mentioned.

Apparently Hackstaff, the prospective pur-
chaser, was not satisfied with the powers of attorney
hereinbefore referred to, and on March 16, 1900, all
the defendants, except Brinkenhuff, Nettlebeck, Rose-
berry and Cody, executed a new power of attorney,
the material parts of which are as follows:

"We,    *    *    *    reposing special trust and con-
fidence in Robert Servant, of the county of Custer,
in the state of Colorado, have made, constituted and
appointed, and by these presents do make, constitute
and appoint the said Robert Servant true and lawful
attorney for us and in our names, place and stead,
for our sole use and benefit to sell, assign, transfer
and deliver all our shares and interests whatsoever
in The Bull Domingo Mining and Leasing Company,
a corporation, and to deliver said shares and all other
necessary papers and records of said company to the
party or parties buying said shares, interests, known
to him; to receive from such party or parties the sum
of . . . . . . . . thousand dollars as first payment and sign
our names to receipts therefor, and receive papers

evidencing the further payments to be made from time to time until full payment is completed; to make all other necessary papers to close said transaction according to the best of his judgment; hereby renewing, ratifying, confirming whatever authority, power, previously given by us to said Robert Servant to carry on such transaction with whatever party or parties, and setting against our names the number of shares of said stock belonging to us respectively.

"Hereby giving and granting unto our said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as we might-or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that our said attorney or his substitutes shall lawfully do or cause to be done by virtue hereof."

In this instrument the number of shares of stock belonging to each signer was, in fact, not shown, but the stock certificates were delivered to Servant and were known to the plaintiff and all parties to the transaction. The effect, therefore, is the same as if they had been respectively set forth, and it will be hereinafter so considered.

Thereupon the certificates of capital stock owned by the signers of the powers of attorney, and then in the hands of Servant, were indorsed to the effect that the owner thereof sold, assigned and transferred to Robert Servant, his attorney in fact, "the shares of the within mentioned stock." Each of such indorsements being signed, per Servant as attorney in fact, by the party in whose name the certificate was written. Such certificates were then delivered to Hackstaff. Certain other instruments in writing were executed, notably a bill of sale, signed, "The Bull Domingo Mining and Leasing Company, by R.

Servant, Sec. & Treas., Attorney in Fact," and likewise a receipt for the $10,000 first payment, signed in like manner; a letter written by Hackstaff wherein The Ute Smelting Company, of which he was president, acknowledged its obligation to pay out of the net proceeds of the sales of ore from the mine, the balance of the purchase price, this letter being addressed to "Mr. Robert Servant, legal representative of The Bull Domingo Mining and Leasing Company, and representative of the shareholders of said company personally by power of attorney."

The $10,000 received as a first payment was distributed in payment of the debts of the company, except a small portion which was retained by Servant for his expenses and commission. Subsequently Hackstaff, the alleged purchaser, acquired from other parties the remaining shares of the capital stock and ·took possession of the property of said company. Thereafter he, or his assignee, undertook to mortgage or bond the property so acquired and litigation arose between such parties and the original stockholders, the defendants here, as to the validity of the sale to Hackstaff, resulting in a judgment to the effect that such attempted sale was of no force and effect as between the stockholders and Hackstaff and his assignee.

A trial to the court, without a jury, resulted in a judgment against defendants for $10,000, from which relief is here sought.

The defendants contend, in substance, that: (1) It was error in the court to deny defendants' application for a change of venue. (2) There was no joint liability of defendants to Servant or the plaintiff, or his assignors. (3) There was, and could be, no direct liability from the defendants to plaintiff, and Servant had no authority to bind the former to pay any commissions whatever. (4) The alleged

sale made by plaintiff was incomplete and conditional and did not entitle him to commission.   (5) The real thing attempted to be sold was the lease to the mine and the property of said leasing company, and, therefore, the suit should have been against the corporation, The Bull Domingo Mining and Leasing Company, rather than the defendants.

Of the five propositions presented, we deem it wise and proper, under the view which we take of the case, to express an opinion at this time upon numbers 1 and 2 only.

1.   The action of the court in denying the motion for a change of venue cannot be reviewed upon the record here.   The affidavits in support of the motion are not properly before us.   They are copied into the record, but not incorporated into the bill of exceptions.   The latter act was essential before they could become a part of the record and without being such, we are precluded from considering them.— *Phoenix Indemnity Co. v. Greger,* 39 Colo. 193, 196.

2.   Whatever the dealings between Servant and the plaintiff, and the latter's assignors, it is clearly evident that the authority the former possessed to bind the other defendants in this suit must be determined from, and measured by, the three powers of attorney hereinbefore mentioned.   This is apparent from the fact that the contention that the transaction took place under a pooling agreement of the stockholders finds no support at all in the record.   The pooling agreement in evidence is for voting purposes only, and Hackstaff's statement that Clark had told him that the stockholders had pooled their stock to sell or get a loan, could not, if true, bind the other defendants.   It is necessary, therefore, to determine whether these instruments authorized Servant to impose a joint liability upon these defendants to pay the commissions claimed, assuming, but not deciding,

that he could impose a several liability. If they did, this judgment must be affirmed, as we rarely disturb findings of fact.

While Servant was unquestionably authorized to sell the interests of the stockholders who executed the powers of attorney, such interests were necessarily represented by their respective shares of stock and in no other way. They owned no mine, or lease, or any other property jointly. The title to the machinery and improvements, and the lease itself, was in the corporation, a distinct entity under the law, and the stockholders, acting together or separately, could not sell them. Each stockholder owned a fixed and certain number of shares separate and distinct from all the others. Acting together does not necessarily create a joint obligation, and there may be a common interest without a joint liability. In the case at bar there is no question that the interest of each of these defendants in his own shares was a separate interest and ownership from that of each of the others. All had a common interest in making a sale, but the agreement of all to sell did not, unless clearly expressed, merge the ownership of the respective shares. It, therefore, follows that, unless by the nature of the instruments signed, authority was granted to Servant to create a joint obligation to pay commissions upon a sale, whatever he assumed to do in that respect will in no wise justify the judgment in this case, unless the other defendants are bound by ratification of his acts in that behalf. Without a joint ownership in the property to be sold, we think the liability of the defendants, if any, to the broker procuring the sale must be ascertained, and measured by, the terms of the contract, if any, authorizing his employment, if they are express; and, if not express, then upon the intention of the parties as gathered from all the circumstances of the case.

This seems to be the rule stated in Parsons on Contracts, vol. I, p. 11. And in Rapalje & Lawrence Law Dictionary, p. 688, the rule is thus stated:

"Whether a bond, covenant or the like is joint or several, depends much more upon the subject-matter than upon the words employed, for if each of the obligees has a separate interest, the right of action will be several, although expressed to be joint and several."

And this court has said in *Mining Company v. Bruce*, 4 Colo. 293, 300:

"Where a deed is executed by several grantors jointly, but their interests in the premises conveyed are distinct and several, any one of them may bring his separate action for his shares of the purchase-money; * * * But it would be otherwise, I take it, if the interest so conveyed were undivided or joint."

And in *Peckham v. North,* 16 Pick. 283, approved in *Adriatic v. Treadwell,* 108 U. S. 367, it is said:

"No particular language or phraseology * * * is necessary to make a contract joint, or joint and several. In all cases we must inquire what was the true intention of the parties."

In *Dwelley v. Dwelley,* 143 Mass. 509, 513, quoting from *Fiske v. Fiske,* 20 Pick. 499, 503, it is declared that:

"Perhaps the only rule to be extracted from all the cases is this: that a court will look at all the circumstances of the case, the nature of the property, the residence, occupations, and relations of the parties, the usages of the place and of the business to which the contract relates, and ascertain by reasonable inference what the parties must have understood and mutually expected at the time of the making of the contract, and then adopt that construction which will

best and most nearly carry the contract into effect as they intended and understood it.''

Applying these rules of construction to the instruments under consideration, we are clearly of the opinion that they in no wise authorize the imposition upon defendants of a joint obligation. It appears to us that such is the effect of the express terms of the contract, as well as all the circumstances of the case. If it were intended that a joint obligation could be created against each of said defendants, what was the object and purpose of the latter in specifying the amount of stock each owned by placing the number of shares opposite their respective names? If the number of shares ''set opposite our respective names'' was not intended to designate the interest of each and retain it separate and apart from the others, it would have been much more direct and simple to have merely subscribed to a power of attorney without more. When the signers set opposite their respective names the amount of stock owned by them respectively, it as effectually segregated such stock from that owned by the others, and fixed the limit of authority granted and the measure of liability that could be incurred, as if separate powers of attorney had been given.

While the rule is well established that where several persons unite in the same covenant or undertaking without words, indicating a severance of liability, they are jointly bound, it is, nevertheless, equally certain that the duty of a court is to determine the intent of the parties, and, if the instrument, when read as a whole with reference to the subject-matter and the circumstances of the parties, clearly shows that only a limited or several obligation was intended to be assumed or authorized by each individual obligor, the courts will, and should, recognize and give force and effect to such intention.—

*McArthur v. Board,* 93 N. W. 580. In that case it is said: "This construction—(a several obligation)—will often be given to contracts even where a literal interpretation of the words employed would seem to impart a joint obligation." Citing *Ernst v. Bartle,* 1 Johns. Cas. 319; *Lanwerlen v. Wheeler,* 5 N. E. (Ind.) 888; *Frost v. Williams,* 50 N. W. (S. D.) 964.

Directing our attention to the parties and the circumstances of the case, we find the defendants almost wholly residing in the vicinity in which the Bull Domingo mine is situated. They are miners, farmers and merchants, dependent to some extent for their prosperity upon the working of said mine. Many of them owned respectively but a few shares of said stock. The defendant, The Benedictine Society, a religious corporation, wholly charitable in its nature, had become, in some way not disclosed by the record, the owner of 576 shares of this stock out of a total of 100,000 shares, and signed the power of attorney. The other defendants, shareholders in severalty, or most of them, signed this same instrument. Can it properly be contended that because these signatures were all upon one instrument and the pronouns "we," "our" and "us" were employed therein that it authorized the creation, by the attorney in fact therein designated, of a joint liability against all such signers to pay a ten per cent. commission upon the entire sum for which the aggregate stock and property of the company was sold? We think not.— *Davis v. Hendrix,* 59 Mo. App. 444. Under the circumstances it is not reasonable to believe that these defendants, presumably of unequal financial standing, ever intended to become guarantors of each other and thus, perhaps, put in peril respectively their entire fortunes in order to dispose of a few shares of mining stock owned in severalty and of uncertain value. We think that by no fair construc-

tion can the language used be given that effect. It is a settled rule of construction that every word and phrase of a contract must be given its appropriate meaning and effect, if possible. This can be done in the present case, and in no other way, by holding that the powers of attorney in question were instruments in severalty.

The claim that the acts of Servant were ratified by these defendants is not sustained by the record. Ratification must necessarily rest upon knowledge of the facts or thing to be ratified, and it does not appear in the record that these defendants, other than Servant, knew anything whatever of the existence of plaintiff's claim for commission until shortly before this suit was brought. The only claim on the part of plaintiff that notice was brought home to such defendants is that Servant testified, in substance, that he would usually, after meeting McCampbell, get as many of the stockholders together as he could and in a general way tell them what he was doing. Certainly such evidence is wholly insufficient to establish a ratification of the acts of Servant in agreeing, if he did, that these defendants should jointly pay the commissions claimed.

"Before an individual or corporation can be held to have ratified the unauthorized acts of his or its agents, every detail of the transaction must have been made known to have ratified the unauthorized acts of his or its agents, every detail of the transaction must have been made known to the principal." —Breach on Contracts, § 1006.

The burden of proving that a principal ratified the unauthorized act of his agent rests on the party asserting it, and knowledge of the principal is an essential element of an effective ratification by him of the unauthorized act of his agent.—*Field v. Small,* 17 Colo. 386.

Under the views as herein expressed it necessarily follows that the judgment below should be, and accordingly is, reversed and the cause remanded.

*Reversed and remanded.*

Chief Justice Steele and Mr. Justice Musser concur.