[No. 6147.]

### HALE v. GOODELL ET AL.

1. **Principal and Agent—Ratification**—Before one can be said to have ratified an unauthorized contract made on his behalf by another, it must appear that he was informed of such contract. The agent not having authority, entered into a written contract for the sale of the principal's lands, expressed to be subject to the principal's approval. The principal residing in another state, the agent wrote him that he had an offer for the property, and the sum offered, but not informing him that an agreement of sale had been entered into, 'nor giving the name· of the proposed purchaser. The principal, in reply to this, forwarded the abstract of title, and wrote that if the agent would prepare a deed he would execute and return it, but that another person named should have an opportunity to bid for the property. Held, there was no ratification of the contract.—(97-101)

A ratification with a condition which is not accepted, is without effect.—(100, 101)

2. ——Burden of Proof—One relying upon a contract as ratified by the party on whose behalf it is made, has the burden of proving ratification.—(101)

3. Pleading—Construction—Every pleading is to be construed as a whole, and not by the acceptance of an isolated averment. A bill for specific performance of a contract made by an agent without authority, averred, in general terms, ratification by the principal; but it also set forth with particularity the details and circumstances of the transaction, and, at great length, the correspondence between the agents and the principals relating to the matter. It was held that these allegations were not to be rejected, in construing the pleading; that after such an elaborate setting forth of the transaction and the correspondence, it was not to be assumed that there was in existence some other letter or deed or paper of ratification, not alleged or adverted to; that the general averment of ratification must be regarded as merely the pleader's conclusion, and as this was not supported by the special matter averred, the pleading was bad on demurrer.—(102-104)

*Appeal from Denver District Court*—Hon. PETER L. PALMER, Judge.

Mr. W. C. KINGSLEY for appellant.

Messrs. VAILE & WATERMAN and Mr. HENRY McALLISTER, Jr., for appellees.

Mr. JUSTICE MUSSER delivered the opinion of the court:

The district court sustained a general demurrer to the amended complaint in this action; the plaintiff elected to abide by the complaint, and judgment was entered for the defendants. The action is for the specific performance of an alleged contract for the sale of real estate. The complaint alleges that Lyons & Johnson were real estate agents and brokers in Denver, and had been and were the agents of the defendant, Abner C. Goodell, who is the same person as Abner C. Goodell, Jr., hereinafter called the

owner, and, as such agents, had the sole care, charge, control and management of the property involved. It is then alleged that these agents entered into a contract, on behalf of the owner, to sell the real estate to plaintiff for $1,500.00, which contract was as follows:

"Denver, Colo., Jan. 4, 1905.

"Received of C. P. Hale undersigned, purchaser, by Lyons & Johnson undersigned, agents for seller, the sum of Twenty-five 00-100 ($25.00) Dollars, as partial payment for real estate described as follows: House known as 323 West Ellsworth St. situated on Lot sixteen (16), Block two (2), Lake Archer Subdivision.

"Said purchaser agrees to pay for said real estate the entire purchase price of Fifteen Hundred ($1,500.00) Dollars, as follows: Twenty-five ($25.00) Dollars on execution of this agreement, receipt above acknowledged; Fourteen hundred and seventy-five ($1,475.00) Dollars on or before January 20th, 1905.

"The undersigned seller agrees to sell and convey said real estate to said purchaser on the above terms (furnishing an abstract of title, certified to date, within ten days), and to execute and deliver a good and sufficient deed conveying said real estate to said purchaser or his assigns free from all liens or incumbrances, on the 20th day of January, 1905, at the time of the payment of said balance of Fourteen hundred and seventy-five ($1,475.00) Dollars, at the office of Lyons & Johnson, 1032 Fifteenth Street, Denver, Colo. The taxes of 1904 shall be paid by seller.

"This contract made subject to the approval of present legal owner.

"LYONS & JOHNSON, Agents for Seller.

"CHAS. P. HALE, Purchaser."

(7)

It is alleged that with the view of obtaining the approval of the owner, the agents, on January 4th, mailed a letter to him in Massachusetts, which letter contained the information that the agents had an offer of $1,500.00 for the property; that it was the only offer they had received for a long time; that the house was badly out of repair, and advised the acceptance of the offer, and requested that the abstract of title be sent if the offer was accepted; but it did not inform the owner that a contract of sale had been entered into, nor did it disclose the name of the person making the offer, nor state that any payment had been made. It is alleged that the agents did not receive any reply to this letter, and that on January 16th they mailed another letter to the owner, calling his attention to the letter of January 4th and requesting an answer. It is alleged that the agents received a telegram from the owner's wife, dated January 19th, stating that he had been sick and that she was preparing the papers to be mailed the next day. It is alleged that the agents received a telegram from the owner dated January 23rd, stating that he had sent the abstract and insurance policy by express. It is alleged that on January 21st, the owner mailed a letter to the agents from Massachusetts, which the agents received in due course of mail, prior to January 30th. This letter was very long and recited, among other things, that, upon the strength of the representations of one Bushnell, a certain amount of money had been put into the property and that the owner was very desirous that Bushnell should have a chance to bid on it, so that he could have no opportunity to say that it had been undersold and that he could have done better. This letter stated that the abstract of title and the policy of insurance were sent with it, and the writer presumed that the agents would pre-

pare a deed, which, when forwarded, he would
execute and return with less delay. All the letters
and telegrams to the effect as stated were set out in·
the complaint. It is alleged in the tenth paragraph
that on account of the delay of the owner, the agents
extended the time for the completion of the con-
tract of sale until the abstract should be received and
the plaintiff had a reasonable time to examine it, and
that when the abstract was received by the agents
it was given to the plaintiff, and the latter, on the
31st day of January, notified the agents that he was
prepared to complete the purchase as was agreed.
Then follow the following allegations in the tenth
paragraph:

"And that thereafter the said contract made on
the 4th of said January, as hereinbefore set forth,
was approved, ratified and confirmed by the said
defendant, through his said agent thereunto duly·
authorized, and thereafter the said plaintiff, by and
with the consent of said defendant, through his said
agents thereunto duly authorized, received, took and
went into possession of the said premises and in
good faith, also relying upon the assurances and
promises expressly given by the said defendant in
his said letter of January 21st to the said Lyons &
Johnson, in which the said defendant accepted the
offer of purchase made by this plaintiff and re-
ported to said defendant as above set forth, and
agreed to execute the necessary conveyance to this
plaintiff vesting the title to said premises in him
in pursuance of said contract of purchase and sale.

"That the plaintiff ever since so taking and
obtaining possession of said premises has been, and
now is, in possession thereof as such purchaser,
under and in pursuance of the said contract ·of pur-
chase, and the extension thereof, as above stated."

It is alleged that the plaintiff paid to the owner, through his said agents, $25.00 of the purchase price on January 4th, and that upon the failure of the owner to carry out his contract, and on the 17th day of February, the plaintiff tendered to the owner, through his said agents, the balance of the purchase money and requested a conveyance of the property to the plaintiff, which was refused. It is alleged that the contract was recorded on February 17th, and that the owner conveyed the premises to the defendant, Zina Goodell, in trust for the use and benefit of the defendant, Martha P. Goodell, wife of the owner, by deed dated February 18th and recorded February 24th. The complaint then proceeds at length with other allegations not material to this review. The relief sought is the enforcement of the contract of January 4th. The parties seem to regard this contract, taken in connection with the other allegations, as purporting to be the contract of the owner, by his agents, when approved by him. It will, therefore, be assumed that the contract does so purport. It is conceded that the agents had no authority to bind the owner by such a contract when they made it, and that if he was at all bound it was by virtue of a subsequent approval. It the owner had any knowledge at all of the contract of January 4th, before his alleged ratification thereof, that fact does not appear in the complaint. The only information imparted to him at all was contained in the letter of January 4th from the agents. This did not inform him that any contract of sale had been made subject to his approval, nor was a copy of the contract sent to him. That letter merely stated that an offer had been made to the agents for the property, and advised him to accept the offer. This offer, if accepted at all by him, was accepted only upon the condition that Bushnell be given an opportunity

to bid on the property, and it nowhere appears that this condition was complied with. Furthermore, this is not an action upon a contract consisting of an offer made by the plaintiff and its acceptance by the owner, but is an action upon the contract of January 4th. It appears from the complaint that the owner had no knowledge of the contract, for the pleader has seen fit to set forth the information that was given him concerning the transaction, and that information contains no intimation, direct or other-wise, that a contract had been made. Before a person can ratify or approve an unauthorized contract, he must know that such a contract has been made for him.—*Field v. Small*, 17 Colo. 386; *Conqueror G. M. & M. Co. v. Ashton*, 39 Colo. 133; *Servant v. McCampbell*, 46 Colo. 292; *Pittsburgh, etc., Co. v. Scully*, 145 Mich. 229; *Roach v. Coe*, 1 E. D. Smith 175.

In *Servant v. McCampbell, supra,* it is said:

"The burden of proving that a principal ratified the unauthorized act of his agent rests on the party asserting it, and knowledge of the principal is an essential element of an effective ratification by him of the unauthorized act of his agent."

Inasmuch as it was necessary for the plaintiff to prove that the owner had knowledge of the contract, in order to establish a ratification or approval thereof, and it appearing on the face of the complaint that he did not have such knowledge, it follows that the contract was not approved or ratified by him directly. If we understand the appellant correctly, he has no fault to find with the foregoing statement of facts and law, so far as it relates to the approval of the contract directly by the owner, and so far as it relates to the allegations contained in that portion of the complaint, beginning with the fourth paragraph and ending with the ninth. This portion

of the complaint immediately follows the setting forth of the contract, is made up of the correspondence between agents and owner and explanations concerning the same, and covers about six pages of the printed abstract. The appellant says that in the portion of the tenth paragraph quoted above, he has alleged the ultimate fact, independent of the other allegations, that the owner approved the contract, and that this is enough to save the complaint. The allegation said to possess this saving grace is, that thereafter (evidently meaning after January 31st, or on that day, after the plaintiff had notified the agents that he was ready to comply with the contract) the contract "was approved, ratified and confirmed by the defendant, through his said agents thereunto duly authorized." The appellant contends that this allegation should be considered alone, and independent of the other allegations, and, if it is so considered, that the complaint is sufficient. Giving to the pleader the benefit of any doubt there may be, for the purpose of this discussion only, it will be assumed that such an allegation, if it stood alone in the complaint, would be a sufficient allegation of an approval by the owner. The allegation, however, cannot be considered alone and apart from the other allegations. A pleading should be considered and construed as a whole, and no single paragraph or phrase should be selected and its meaning determined without reference to the context.—*Humphreys v. Frank,* 46 Colo. 524 at 528.

In the first paragraph of the complaint, it is alleged that the agents had the sole care, charge, control and management of the property for the owner. The six printed pages already referred to contain the correspondence between the agents and owner and explanations thereof. These allegations and the setting forth of the correspondence do not,

nor were they intended to, show that the owner directly approved the contract, for the allegation in the tenth paragraph says it was approved by him, through his agents thereunto duly authorized. What possible purpose could the allegation in the first paragraph mentioned above, and in the six pages, subserve, but to show what authority the agents had to approve their unauthorized contract? If, as the appellant contends, the allegation in the tenth paragraph should be considered alone, because the authority of the agents might be proven by other and later correspondence not mentioned in the complaint, then the allegations, evidently inserted to show the authority of the agents, would be altogether immaterial, for the agents might have been strangers to the property before they made the contract, and the correspondence between them and the owner, set forth in the complaint, might not have passed, and yet, by correspondence or otherwise, at a later period, the owner could have authorized the agents to approve the contract. In substance and effect, the appellant now asks that the six pages in his complaint, as well as the allegation in the first paragraph, be disregarded, held for naught, and as not connected with the phrase "thereunto duly authorized" in the tenth paragraph. He says the agents might have been authorized by some later correspondence. If so, why was this not set forth in the complaint? Whether it was proper or improper pleading, the appellant saw fit to set forth in his complaint, at great length and with much particularity, the correspondence that took place between the agents and owner. Can it now be said that all of the correspondence was not set out in the complaint, and that a letter, or power of attorney, or other paper, authorizing the agents to approve the contract, was inadvertently or purposely omitted?

Certainly not. The pleader cannot be charged with the omission of the only sufficient and important fact. He set forth, with clearness and minuteness, all the facts and circumstances connected with and surrounding the transaction; drew therefrom the conclusion that the agents were authorized to approve the unauthorized contract of January 4th; wrote this conclusion into the complaint with the words "thereunto duly authorized," and, believing fully in the correctness of his position, fondly hoped that it would be maintained. This is further shown by the allegation in the part of the tenth paragraph quoted above, wherein it is said that the plaintiff relied upon the assurances and promises expressly given by the owner in his letter of January 21st to Lyons & Johnson. If he relied on some other letter, or paper, or fact, he certainly would have said so. Plainly, the authority of the agents must have arisen, if it arose at all, by necessary implication, out of the facts and circumstances so minutely narrated in the complaint. To exist, the authority must have had its source in the intention of the owner. —Mechem on Agency, § 274. The most that can be said is, that the owner evinced an intention to accept an offer of $1,500.00 and execute a deed to some person whom the agents might thereafter name, if Bushnell was given an opportunity to do better, so that the latter could not complain that the property he had so well recommended was undersold. Even if an unqualified acceptance of the offer would have been authority for the agents to approve the contract, which is not determined, there was no unqualified acceptance here. There was annexed to the acceptance a condition precedent with reference to Bushnell. The complaint fails to state that such condition was complied with, and it cannot be presumed that it was complied with in

order to benefit the complaint. Under the circumstances of this case, it is unfair to the owner to eliminate the fact that he did not have any knowledge of the contract. That fact should be borne in mind, in order to determine what the owner's intention was. The plaintiff had full knowledge that the agents were unauthorized to make the contract. In all his communications to the agents, the owner was in the dark as to the contract. His attention was not directed toward a sale already made without his knowledge, but to a sale to be made under the conditions mentioned in his letter of January 21st, and any implications that arise from his conduct can refer only to a sale to be made under the circumstances prescribed by him. Instead of the complaint showing authority in the agents to approve the contract, it shows they were without authority, and, therefore, the demurrer was properly sustained. The judgment is affirmed.     *Affirmed.* ·

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE WHITE concur.